Green, J.
delivered the opinion of the Court.
Whether any contract for the sale and purchase of lot No. 112 ever was entered into by the complainant and *24 the defendant Whiteside, is extremely uncertain from the proof. A contract, to claim the aid of this court for ⅛ enforcement, must he clearly proved to exist, and must he certain in its terms.
In this case we are strongly inclined to the opinion, that no specific contract, whatever, was made. The witness mainly relied on to prove the contract, is Doctor Sapping ton; who, although, in the first part of his deposition, does state, that Newnan and Whiteside did agree about the lot,- and that Newnan was to give a thousand dollars for it, yet, in the same deposition, he states facts, which tend strongly to weaken the force, and to hring into suspicion the accuracy of his former statement. Sappington states, Newnan was to take possession of the lot, and pay a moderate rent until some convenient time for Whiteside to convey. No time was mentioned for the payment of the $1000; the reason of which was owing to the uncertainty when the suit between Newnan and Maclin would be decided: after which decision Newnan was to have the privilege of paying in the Maclin land at a fair price, if the court should decree him to take the title. This statement accords well with Whiteside’s answer, and indicates most strongly that no contract of sale was made. The payment of rent agreed on, opposes the idea of a contract for the purchase of the property. No time was mentioned for the payment of the purchase money, and Whiteside was to take land in payment, without settling on any price for the land, or stipulating any means of fixing the price so as to make it certain. These facts strongly favor the conclusion, that the parties left the matter unadjusted, and open for such future contractas they might agree on, when the events which they seemed to expect should transpire, at which time they calculated on entering into a contract. But, furthermore, the lot was regularly listed as Whiteside’s property, and the taxes paid by him, and Quarles says Newnan promised to desist from making any further improvements, when he *25 delivered Whiteside’s note stating that he would not pay for them. Robertson’s evidence confirms this statement; for he says, that Newnan told him, Whiteside had stopped him from making improvements. Whiteside’s statements, as detailed hy Darby, are made evidence by the complainant’s interrogatories calling for them. Whiteside always denied to Darby that he had ever sold the lot to Newnan. Smith understood, both from Whiteside and Newnan, that the latter had rented the lot, and occupied it as a grazing lot. Sometime before Hayes and Carroll bought the lot, M’Lemore was requested by Newnan to purchase the lot of Whiteside, in his own name, for Newnan’s benefit. He made application for this purpose to Whiteside, who was willing to sell, and said he would as soon sell to Newnan as any one else. Barrow, at the request of Newnan, made a like application. Why send these men to purchase the lot in their own name, if he knew that it had already been sold to him? These applications imply a consciousness that Whiteside had a right to sell the lot to whom he chose. Add to all this, that the answer of Whiteside most positively denies that he ever made any such contract as is charged in the bill, and it would seem, that opposed to all these facts and circumstances, in .order to establish the contract charged, the clearest and most indubitable proof ought to be produced. Does such proof exist in this cause? We think not. We have already seen that Sappington’s evidence is inconclusive. Willis and Boyd depose that they heard Whiteside say he had sold the lot to Newnan, but that never having paid any thing for it, he should not have it. Barrow says he heard Whiteside say, he had agreed to let Newnan have the lot. This evidence, the confession of the party to be charged, is always to be received with caution. How easily are expressions, in casual conversations like these, either misunderstood or perverted, and how wholly impossible to ■disprove them if false. Probably few cases more fully *26 than this, evince the -wisdom of the legislature in passing the statute of frauds, or indicate more strongly to the court, the propriety of adhering strictly to its provisions. If, therefore, the evidence had established the contract, as charged, in the clearest manner, we should have dismissed the bill. The legislature has spoken in unambiguous and plain language, and by its enactment requires the contract should have been in writing. If the court undertake to declare the law differently, the effect is a repeal of the legislative enactment. Cooke 403. 2 Ten. 192. Patton and M’Clure. (a) Had it been shown that any substantial improvements, adding to the value of the lot, had been made by complainant, he would have been entitled to compensation for them, because of the vague assurance that he should have the privilege over others of eventually purchasing the lot. 1 J. Ch. Rep. 286. But no proof exists that any valuable improvements were made; but, on the contrary, that none such were put upon it. A reference to the clerk and master is therefore unnecessary.
Bill dismissed.