## GIBSON COUNTY BANK v. SOL SHATZ et al.

Western Section. July 1, 1930.

Taylor, Adams & Freeman and W. R. Landrum, of Trenton, for appellee, M. H. Taylor.

H. H. Elder, of Trenton, for Gibson Co. Bank.

Joe A. Gordon, of Kenton, and Thomas E. Harwood, of Trenton, for appellant, Shatz.

OWEN, J. This law suit involves the liability or nonliability between the endorsers on a certain note executed on March 8, 1923, to the Gibson County Bank. The note was signed by the Trenton Textile Mills, Inc., for $12,500. The note was due ninety days after date.

The bill in the instant case was filed August 16, 1924. The defendants to this suit are Sol Shatz, J. B. Ward and Hillsman Taylor; they being sued as endorsers on said note. Between the maturity of the note and the filing of complainant's bill, certain credits had been entered on said note, which sums or credits had been paid by the Trenton Textile Mills, Inc. The Trenton Mills became insolvent.

There was a decree rendered against Sol Shatz, J. B. Ward and Hillsman Taylor for $8,419.59, the balance due on said note with interest thereon and $500, as reasonable attorney's fee for the solicitor of the Gibson County Bank, and all costs.

The defendant, Hillsman Taylor, filed an answer and cross-bill against the defendant, Sol Shatz. Taylor insisted that he signed the note as an endorser at the request of Sol Shatz; Sol Shatz agreeing orally to guarantee and hold said Taylor harmless if he would endorse the note sued on.

In this cause, Taylor alleged that, but for this agreement on the part of Shatz, he would not have signed said note, and he sought a judgment against Sol Shatz for any and all amounts that he should have to pay on said note or any judgment thereon.

Shatz answered this cross-bill, denying any such agreement as alleged, and denying that Taylor was entitled to a judgment against Shatz.

At the September term, 1927, the case was heard on the entire record, and the Chancellor sustained Taylor's cross-bill, and rendered a judgment in favor of Taylor and against Shatz, for the amount Taylor had paid, $2,878.68, which amount Taylor had paid on the judgment, procured by the Gibson County Bank, with interest thereon.

The decree further provides that if Hillsman Taylor should pay one-third of the $500 attorney's fee, then judgment is rendered in his favor against Sol Shatz for such amount, as Taylor may pay, as attorney's fee.

Shatz excepted to this decree, prayed and effected an appeal, and has assigned six errors; these errors make the following insistences:

(1) The court erred in holding that Shatz contracted and agreed to indemnify Taylor against loss by reason of Taylor's endorsement on said note sued on.

(2) The facts as found by the Chancellor do not create a preponderance of the evidence.

(3) The Chancellor should not have allowed interest and costs against appellant.

(4) The Chancellor erred in considering the evidence of Harry H. Elder as to a declaration made by Taylor in the presence of Elder and the appellant.

(5) The alleged promise or agreement by appellant Shatz, if made, is void under the Statute of Frauds.

(6) The Chancellor erred in including and holding appellant liable for one-third of Taylor's part of attorney's fee, due the solicitors of the Gibson County Bank.

The brief facts, briefly stated in connection with this litigation, are as follows:

The Trenton Textile Mills, Inc., was organized December 8, 1922, just what its authorized capital was does not appear. It appears that the firm of Taylor & Adams, attorneys of Trenton, composed of Hillsman Taylor and Robert P. Adams, owned $1000 of the stock of this corporation. This stock was procured by said attorneys rendering legal services to the amount of $750, and paying $250. Appellant Shatz owned $10,000 worth of stock in said corporation. Just after its organization, the corporation borrowed $25,000; $12,500 from the complainant bank and a like sum from another bank. The note to the complainant bank was endorsed by appellant, Shatz, appellee Taylor and J. B. Ward; Ward did not testify in this case.

Prior to the maturity of the note sued on, it appears that Taylor became dissatisfied with a certain contract that the mill had made with the manager of the mill, one Phillips, and Taylor announced, "that he was through with the mill and would have nothing further to do with it."

When the note fell due, Taylor insisted on the mill paying the note; Shatz wanted it renewed. The mill, at that time, was solvent. Shatz was president and Shatz's son was acting secretary of the mill. Shatz had sold the mill cotton and had loaned it money. He wanted the mill to continue in business.

It appears that Shatz took the note, sued on, to Taylor three different times before Taylor signed it. Mr. Shatz testified that he was ready and willing to pay his part of the note, but we think that Mr. Shatz is not borne out by the record as to this. He further admits that he had to see Taylor three times before he got the endorsement, but testified that Taylor gave no excuse or reason why he refused to endorse the note when Shatz called on him the first and second time. Taylor is corroborated as to why he refused to sign the note and why he insisted on having the note paid when the note was placed in the hands of Mr. Harry H. Elder, a member of the Trenton bar. Mr. Elder testified that he saw Taylor in regard to bringing suit, and Taylor insisted that Shatz was to stand between Taylor and any loss to the bank.

It appears that Shatz and Taylor met in Elder's office just before suit was brought by Elder for the bank, and Mr. Elder testifies to the following:

"Q. 4. When he was in your office was Mr. Hillsman Taylor, also in your office on one occasion in regard to this note? A. Yes. Mr. Taylor came into my office after Mr. Shatz came there. I do not remember just how he came to come but I think I called him. I am not sure. At any rate he was in there a part of the time that Mr. Shatz was in there.

"Q. 5. On that occasion did or not Mr. Hillsman Taylor, say to Mr. Sol Shatz in your presence this or this in substance, addressing his remarks to Mr. Shatz, that he, Mr. Sol Shatz, had agreed to hold him harmless if he would endorse that note? A. Yes sir."

Mr. Shatz denies that Mr. Taylor made this statement to him in Mr. Elder's office. It appears that Mr. Shatz's memory is not as clear in a number of matters as the cross-complainant Taylor. Taylor was not cross-examined as to his deposition. Both Shatz and Taylor are supported as to good character by witnesses, and each one stands before the court fully credited as to good character.

It appears that Shatz made no denial in Mr. Elder's office at the time Taylor told Shatz "that he, Shatz, had agreed to hold Taylor harmless if Taylor would endorse that note."

Mr. T. K. Happel, president of the complainant bank, testified "that Shatz took the note out three times to get Taylor to endorse it," and Mr. Happel was asked the following question, with the following answer:

"Q. 10. Why if you remember was the note left in the bank at first and for several days with only the names of J. B. Ward and Sol Shatz on it? A. I think there was some trouble in getting Mr. Taylor to sign it, and Mr. Shatz left it there and later got it again."

Under all the facts and circumstances, we are of the opinion that the weight of the evidence preponderates in favor of Taylor, and that

the evidence of attorney Elder was competent, in fact, there was no exception to his deposition at the hearing. Allison v. Barron, 3 Cold., 414.

On the question of interest and costs being adjudged against Shatz; this matter was within the sound discretion of the Chancellor. He did not abuse that discretion, and this assignment is overruled.

On the question of attorney's fee, Taylor's is one-third of $500 if Shatz is to hold Taylor harmless, as we hold that he agreed to do from the preponderance of the evidence as we weigh it, then he should pay whatever attorney's fee Taylor has to pay, and the Chancellor was correct in so holding.

On the question of the Statute of Frauds, this defense was not specially pleaded. Where the Statute of Frauds is relied on as a defense, it must be pleaded; otherwise, a parol contract may be enforced. Citty v. Manufacturing Co., 93 Tenn., 276; Barnes Bros. v. Cole Co., 101 Tenn., 354; Bailey v. Henry, 125 Tenn., 401; Huffine v. McCampbell, 149 Tenn., 47.

"Where the promisor is himself liable as maker or endorser, his promise to indemnify some other party to the paper is not within the statute." 27 C. J., pp. 43, 157.

"Where a promise by a surety, in form of a promise to pay the debt of a principal, is in reality the promise to pay the surety's own debt, it is not within the statute. Where the making of guarantees or suretyship contracts constitutes the business of the guarantor, a particular guarantee made by him in pursuance of his business and to secure substantial benefits or advantages to himself is not within the statute."

"It has been held in many cases that a promise to indemnify the promisee for becoming surety for a third person at the request of the promisor is not within the statute."

"There is greater reason for holding that the promise of one co-surety to indemnify another, who signs as co-surety, at his request, is not within the statute than where the promise is not by one so liable, and it seems to be generally held that such a promise is not within the statute . . . as the greater includes the less, an agreement between co-sureties made at the time of their signing, and in consideration thereof for indemnity in part, as where they agree upon a ratio of liability different from that which the law raises or implies in case they are held for the default of their principal, is held not to be within the statute." 25 R. C. L., 527, 529.

These authorities were reviewed by our own Tennessee Supreme Court, in a recent case, and it was held, "a promise made by a surety to induce another to become his surety and share with the promisor the obligation incurred, is not within the Statute of Frauds."

The various authorities and cases are reviewed in this opinion, the latest expression of our Supreme Court, and even had the Statute of Frauds been pleaded, it could not, therefore, avail in this case. Galloway v. O'Neil, 158 Tenn., 7.

It results that all the assignments of error are overruled and disallowed, and the decree of the lower court is affirmed.

The appellee Taylor has assigned errors upon the action of the Chancellor in sustaining exceptions to certain evidence by the witness Robert P. Adams, who testified that Taylor stated to Adams why he had signed the note after Mr. Shatz's third visit and about the time Shatz went out of Taylor and Adam's office.

This assignment becomes immaterial as we view the case, and it is overruled. All assignments are overruled.

The cross-complainant will recover of the defendant and his sureties on appeal bond, the amount of the judgment rendered in the lower court, with interest thereon and all the costs of the cause, for which execution will issue.

If the parties cannot agree as to the amount of Shatz's liability on the attorney's fee, paid or to be paid by Taylor, then this cause will be remanded to the Chancery Court of Gibson county for the purpose of enforcing that portion of the Chancellor's decree with reference to the attorney's fee due from Taylor to the solicitors of the complainant bank, for which appellant is liable.

Heiskell and Senter, JJ., concur.