DR. ORDIE H. KING, SR., Plaintiff in Error, v. JOHN A. DENIES SONS COMPANY, Defendant in Error. —404 S. W. (2d) 580.

Western Section at Jackson. February 4, 1966.

Certiorari Denied by Supreme Court June 6, 1966.

40

Hearn W. Tidwell, Memphis, for plaintiff in error.

Owens & Ruleman, Memphis, for defendant in error.

BEJACH, J. In this cause, Dr. Ordie H. King, Sr., who was defendant in the lower court, appeals in error from the verdict of a jury and judgment based thereon against him in the sum of $1,496.60. In this opinion, the parties will be referred to, as in the lower court, as plaintiff and defendant, or called by their respective names.

Suit in this cause was originally filed by plaintiff, John A. Denies Sons Company, against the defendant, Dr. Ordie H. King, in the General Sessions Court of Shelby County, Tennessee. The summons, or warrant, in the case, omitting the formal parts of same, is in the words and figures as follows, to wit:

"To any Lawful Officer to Execute and Return:

Summon Dr. Ordie King, 3181 Poplar, Memphis, Tennessee

To appear before the Court of General Sessions of Shelby County, Tennessee, to be held at the Court-rooms of said Court in said County on the _____ day of _____, 19___, at _____ M., then and there to answer in a civil action brought by John A. Denies's Sons Co. for balance due plaintiff for build-ing materials furnished on open account, which is owing, due and unpaid in spite of demand $1,496.60 under _____ Dollars.

This 31 day of March, 1964."

In the General Sessions Court, the defendant filed a sworn answer, which, omitting the caption, signature and affidavit thereto, is in the words and figures, as follows:

"Comes now the Defendant, Dr. Ordie H. King, in answer to the summons filed in this cause and says:

That he was one of the stockholders of Magnolia Swift Homes, Inc., a Tennessee corporation, which filed a Petition in Bankruptcy in the District Court of the United States for the Western District of Tennessee, being Cause Number BK 64-318, on January 14, 1964.

Defendant admits that he was President of Magnolia Swift Homes, Inc. and one of the stockholders thereof, but denies that he is indebted to the Plaintiff in any amount, as the indebtedness sued upon was the debt of Magnolia Swift Homes, Inc. which was listed under Schedule A-3 of the Petition in Bankruptcy in the amount of $1,496.60.

For further plea, the Defendant says that he has not and did not assume any of the obligations of the said corporation and that the debt herein sued upon

was the debt of Magnolia Swift Homes, Inc., now in Bankruptcy.

For further plea, the Defendant says that he was not and has never taken an active part of the business of the said corporation and his only interest, as far as Magnolia Swift Homes, Inc. was concerned, was that of a stockholder.

Now having fully answered, Defendant prays that this cause be dismissed as to him at the cost of the Plaintiff herein.''

It will be noted that the above quoted answer contains a plea of nil debit, a plea of non assumpsit, and a plea of the bankruptcy of Magnolia Swift Homes, Inc., whose debt the claim sued on was; but it contains no plea of the Statute of Frauds.

Judgment was rendered in the General Sessions Court in favor of plaintiff and against the defendant for $1,496.60, which judgment was appealed by defendant to the Circuit Court of Shelby County. In the Circuit Court, defendant demanded a jury and the jury returned a verdict against him for $1,496.60, for which sum judgment was rendered. After a motion for a new trial had been overruled, defendant's appeal in error to this Court was perfected. A narrative bill of exceptions was filed. Said narrative bill of exceptions is quite sketchy, and according to the contentions of counsel for defendant, incomplete.

From that narrative bill of exceptions, we quote as follows:

''Upon call of the case for trial, counsel representing the parties made statements to the Court as to their

44

respective positions with the Plaintiff asserting that by a telephone conversation between an employee of the Plaintiff and Dr. Ordie H. King, Sr., the Defendant, in May of 1963, that the records of the John A. Denies Sons Company indicated that there was an outstanding balance due their (sic) on May 1, 1963 by Magnolia Swift Homes, Inc. and that an order had been placed by an employee of Magnolia Swift Homes, Inc. for additional materials to be delivered to two jobs, which because of the outstanding balance due the company, that Magnolia Swift Homes, Inc. was denied further credit. That thereafter this said employee of John A. Denies Sons Company made a call to the office of the Defendant, Dr. Ordie H. King, Sr., and by such conversation that Dr. King agreed verbally to guarantee the account, and relying upon such verbal contract that the Plaintiff, John A. Denies Sons Company did extend credit to Dr. Ordie H. King, Sr., for the Magnolia Swift Homes, Inc., to the extent of $1,496.60, based upon the verbal contract with the Defendant, and that therefore, the Defendant was indebted to the Plaintiff in that amount.

The Defendant by opening statement relied upon the Sworn Answer as filed in the General Sessions Court wherein the Defendant specifically denied that he was indebted to the Plaintiff in any amount and further attested that the debt was that of Magnolia Swift Homes, Inc. of which he was merely a stockholder and an officer of the corporation and that the said Magnolia Swift Homes, Inc. has been adjudicated a bankrupt in cause number BK-64-318 by the District Court of the United States for the Western District of Tennessee. That such Petition in Bankruptcy did list the

amount due the Plaintiff of $1,496.60 and that the said Magnolia Swift Homes, Inc. had been granted a final adjudication and discharge in bankruptcy by that Court. The Defendant further relied upon as a defense, which was made an Exhibit in the case, a certified copy, under the Acts of Congress, of the Discharge of the bankrupt, Magnolia Swift Homes, Inc. on July 28, 1964.

Defendant further relied upon the fact that no objections had been filed in the bankruptcy proceeding to the Discharge of the indebtedness claimed to be owed to the Plaintiff by the Defendant, Dr. Ordie H. King, Sr. The Defendant further asserted that he had not and did not assume any of the obligations of the Magnolia Swift Homes, Inc. and further that he had not at any time taken an active part in the business and that his only interest amounted to that of a stockholder and officer."

We also quote from said narrative bill of exceptions, which summarizes the evidence introduced, as follows:

"First witness for the Plaintiff was Mr. Floyd Waltman, who testified that he was the Credit Manager of John A. Denies Sons, Company and that in such capacity and under his jurisdiction and control there was an outstanding balance as billed to Dr. Ordie H. King, Sr. in the amount of $1,496.60 which such amount was represented by 13 invoices which were made an exhibit to his testimony and are attached hereto as an exhibit in this Bill of exceptions. (Said invoices are not, however, attached to the bill of exceptions, nor otherwise included in the record.) The witness further testified that these invoices were for building materials

delivered to two jobs under construction by Magnolia Swift Homes, Inc., but that the same showed that they were billed to Dr. Ordie H. King, Sr., at 3181 Poplar Avenue. On cross-examination this witness testified that he was not an employee of the Plaintiff at the time that this transaction took place and that he was not familiar with the placing of the orders or the delivery of the same or how the billing came about. He further testified on cross-examination that the 13 invoices exhibited did not indicate that any one of them had been ordered by the Defendant, Dr. Ordie H. King, Sr., nor did they reveal that the material as shown thereon was delivered to the Defendant. He further testified that all of the billing as indicated from the invoices showed that these invoices and statements had been mailed to a post office box number 7325 in the city of Memphis, and not to the address shown on the billing machine as that of Dr. Ordie H. King, Sr.

The next witness was Mrs. Mildred Echols who testified that she was Assistant Credit Manager for the Plaintiff and had served in that capacity for many years prior to this transaction. She testified that she was familiar with the records of accounts of the John A. Denies Sons Company and that as of May 1, 1963, that there was an open account delinquent due by Magnolia Swift Homes, Inc. and that because of the delinquency in the open account she had refused to extend further credit to the company. That being advised that no further credit would be extended to the company, she made a telephone call to the office of Dr. Ordie H. King, asked for him by name and held a conversation with him about the delinquent account and the orders which had been placed with the Plaintiff

company which had been refused by the Plaintiff. She further testified that she had talked with Dr. King by telephone before the date of May 8, 1963, and that she recognized the voice as being that of Dr. Ordie H. King, Sr. That as a result of the telephone call that Dr. Ordie H. King, Sr. stated to her that he would guarantee the account and see that the company was paid the invoices for materials delivered to the two jobs under construction by Magnolia Swift Homes, Inc. and that they had listed the Plaintiff, John A. Denies Sons Company in the amount of $1,496.60 and that no action was taken by the company in the bankruptcy proceedings. She further testified that the orders as placed by Magnolia Swift Homes, Inc. and delivered on and after the date of May 8, 1963, were placed by a Mr. Kelly Allen or a Mr. Jack Oliver and that none of the invoices indicated having been ordered by the Defendant, Dr. Ordie H. King, Sr. She testified that she did not recall where the information originated as appeared on each invoice showing that the billing and invoices were to be mailed to P. O. Box 7235, Memphis, Tennessee. She further testified that she did not recall Dr. King ever having made the statement that he would guarantee the account after the date of May 8, 1963; and the only agreement she was familiar with was the verbal statement made to her by telephone on the date of May 8, 1963 when the party whom she identified as the Defendant, Dr. Ordie H. King, Sr., stated that he would guarantee the bill and would see the company received their money. She further testified that she could not say whether or not the building materials as shown on the invoices were ever actually delivered to the jobs or locations indicated thereon as she was in the Credit Department and

could not say of her own knowledge that these materials had been delivered. She did admit that the invoices did not reflect that the orders were placed by Dr. King and that the delivery records for the materials were not signed by him. This was all of the evidence introduced by the Plaintiff.

The first witness for the defense was Dr. Ordie H. King, Sr., who testified that he had been a practicing dentist in the City of Memphis for 33 years since his graduation from the University of Tennessee and that he had never engaged in any other business or profession. He testified that he was one of the original incorporators of Magnolia Swift Homes, Inc. and that he was a stockholder and had invested some $42,000.00 in the corporation. That there were other stockholders other than himself and that at no time during the history of the company had he ever taken any part in the management of the company. He testified further that Magnolia Swift Homes, Inc. filed a voluntary Petition in Bankruptcy in the District Court of the United States for the Western Division of the Western District of Tennessee in January of 1964 and that the Plaintiff, John A. Denies Sons Company was listed as an unsecured creditor in the Petition in the amount of $1,496.60. He identified a certified copy of the Order of Discharge of Magnolia Swift Homes, Inc. adjudicating the said corporation a bankrupt with a Final Discharge having been entered by that Court on July 28, 1964, which said certified copy, under the Acts of Congress, of the said Discharge was marked as an exhibit to his testimony and is attached hereto and made part of this Bill of Exceptions. (Same is not, however, attached to the bill of exceptions, nor other-

wise made a part of the record.) Dr. King further testified that he recalled a telephone conversation sometime during the early part of May 1963 from some person in the Credit Department of the Plaintiff, John A. Denies Sons Company, but that he emphatically denied that he assumed the obligation or ever made the statement that he would guarantee the account. He testified that he did relate to the caller that he understood that there was sufficient money coming into the corporation upon the completion of the two jobs and that when such money was paid in to the company that he would see that the company paid the Plaintiff's account. He testified that he was not familiar with the business transactions of the company; only to the extent that he knew the company had been losing money and that it was necessary that he loan the company several thousand dollars for which he had taken notes and that these notes had been listed in the Petition in Bankruptcy by Magnolia Swift Homes, Inc. He further testified that there were other stockholders in the company and that his only connection with the company other than that of being an officer and stockholder was that he would occasionally discuss the operation of the business with the various managers who were employed to operate the same. He testified that he signed all checks upon receipt of approved invoices. He denied that he had ever received an invoice or statement from John A. Denies Sons Company indicating that any amount had ever been charged to him personally either at his own home or at his office. That the Post Office Box number 7235 was the registered post office box for Magnolia Swift Homes, Inc. and that he denied owing the account or having ever assumed the same or personally stood

for the credit of the corporation on this account or any other account. He further testified that the monies due on the two jobs for which the invoices indicated material as having been delivered to his knowledge had never been paid by Magnolia Swift Homes, Inc. and that ample monies were on hand with the finance company and mortgage holder to pay these invoices.

The next witness for the Defendant was Mr. George A. Holmes who testified that he was one of the original incorporators of Magnolia Swift Homes, Inc. and that to his certain knowledge, Dr. Ordie H. King, Sr. had never at any time taken an active part in the management of Magnolia Swift Homes, Inc., but that Dr. King had always engaged in his profession of the practice of dentistry. That he was manager of Magnolia Swift Homes, Inc. for some period of time, but later resigned and his stock was repurchased by the corporation as Treasury Stock and that at the time of this transaction involved in this lawsuit, he was not with Magnolia Swift Homes, Inc., nor was he familiar with the transaction involved in the case.''

It is apparent that a square issue was raised as to whether or not defendant did orally guarantee the account of Magnolia Swift Homes, Inc., but the verdict of the jury forecloses this issue against defendant.

In this Court, as plaintiff in error, defendant has filed six assignments of error, which are as follows:

## ''ASSIGNMENTS OF ERROR

### I.

The Court erred in failing to direct a verdict for the defendant in accordance with the motions properly and seasonably made at the end of all the proof.

## II.

The Court erred in charging the jury on the law of contracts as there was no proof or evidence of any binding contract between the plaintiff and the defendant as an individual or as a stockholder of the corporation, Magnolia Swift Homes, Inc.

## III.

The Court erred in failing to sustain the defendant's motion for a directed verdict as there was no evidence or proof of consideration either in the evidence or in the pleadings as would be necessary to bind the defendant on any oral contract.

## IV.

The Court erred in failing to grant the defendant's motion for directed verdict and his motion for a new trial wherein there was presented to the Court that the debt sued upon had been discharged in bankruptcy and that the summons and pleadings on behalf of the plaintiff failed to recite, allege, or aver any consideration for the alleged oral contract between the defendant and the assistant credit manager of the plaintiff company.

## V.

The Court erred in failing to grant defendant's motion for new trial based upon its contention and argument that the pleadings on behalf of plaintiff were fatally defective in that they failed to plead, aver or allege a valid consideration for the contended oral contract between the parties. This issue was presented under assignments II and III of the defendant's motion for a new trial.

## VI.

The Court erred in failing to grant the defendant's motion for a new trial predicated upon assignment IV thereof that there was no evidence before the Court to show that the merchandise or construction material was ordered by the defendant or that the same was delivered to the defendant, his agent, servant or employee."

■ Before taking up and disposing of these assignments of error, we must first dispose of a preliminary matter, namely, the application by counsel for defendant for a suggestion to diminution of the record, so as to make the narrative bill of exceptions show that defendant at the end of the proof had made a motion for a directed verdict. We cannot grant this application of defendant because it is not in truth and in fact a suggestion of diminution of the record which is sought, but is an effort to amend the bill of exceptions. The motion for a directed verdict, if such motion was made, would not appear in the technical record, but would have to appear, if at all, in the bill of exceptions.

■ In Ballard v. Nashville & K. R. Co. (1894), 94 Tenn. 205, 25 S.W. 1088, our Supreme Court held that after the time had expired within which a bill of exceptions could be legally filed, a bill of exceptions could not be amended even if agreed to by lawyers in the case with such agreement approved by the trial judge. Among the cases holding that a bill of exceptions to be part of the record must be completed and filed within the time allowed by law or authorized extensions thereof, are: Garrett v. Rogers (1870), 48 Tenn. 321; State ex rel. Partin v. Dykes (1935), 169 Tenn. 100, 83 S.W.2d 243;

Tenn. Cent. Railroad v. Tedder (1936), 170 Tenn. -639, 98 S.W.2d 307 and Hamilton v. Wolf (1951), 194 Tenn. 423, 250 S.W.2d 910, 912. In the recent case of Baldwin v. State (1959), 204 Tenn. 639, 325 S.W.2d 244, in an opinion by Mr. Chief Justice Neil, the Supreme Court held that a bill of exceptions to become a part of the record must be complete in every particular, including all evidence in the case and ruling of the trial judge upon every controversial issue, and that when it is once signed and thus authenticated, no one may take anything from it or add to it.

■ In the instant case, it is argued by counsel for defendant that an exception should be made because, here, it is not evidence which is sought to be added to the bill of exceptions but the recital of a procedural matter, represented by defendant's alleged motion for a directed verdict. We see no reason for drawing a distinction on that ground; and we must, therefore, consider only the record before us, including the bill of exceptions as signed, filed, and made a part of that record.

■ Counsel for defendant also contends that the defense of the Statute of Frauds, as set out in section 47-1204 T.C.A., which is part of the Uniform Sales Act, would also be presented if the diminution of the record were allowed. Aside from the fact that that particular provision with reference to the Statute of Frauds is not the section of the Statute of Frauds which should have been pleaded in the instant case, as a defense to plaintiff's cause of action, the only way it could be brought before us at this time is by amendment of the bill of exceptions, which is not permissible. The section of the Statute of Frauds which should have been pleaded by defendant is

set out in section 23-201 T.C.A., being the second section thereof, which, so far as same is applicable to the case at bar, provides:

"No action shall be brought: (2) Whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person;

[u]nless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing."

Defendant's application for suggestion of diminution of the record is denied.

We take up next defendant's six assignments of error, which are quoted above. These assignments of error present four contentions for determination by this Court, which are:

(1) That the Court erred in failing to direct a verdict for defendant.

(2) That there was no valid contract between the plaintiff and the defendant.

(3) That there was no consideration for the alleged contract sued on.

(4) That the debt sued on by plaintiff had been cancelled by a discharge in bankruptcy.

■■ Defendant's contention that his motion for a directed verdict should have been sustained must be disallowed, because the record fails to show that any such motion was made. It was suggested at the hearing that an assignment of error that there was no evidence to sustain the verdict of the jury would raise the same issue. Unfortunately for defendant in the instant case,

however, even that assignment of error is not made. But even if it had been made, it would be of no value because the testimony of Mrs. Mildred Echols, assistant credit manager of plaintiff, was ample to sustain plaintiff's suit, as charged.

██ Defendant's Assignment of Error Number II does, however, charge that "The Court erred in charging the jury on the law of contracts, as there was no proof or evidence of any binding contract between the plaintiff and the defendant as an individual or as a stockholder of the corporation, Magnolia Swift Homes, Inc." This defense would have been good if defendant had pleaded as a defense the Statute of Frauds set out in section 23-201 T.C.A., which is quoted above. The testimony of Mrs. Mildred Echols, assistant credit manager for plaintiff, establishes merely that defendant guaranteed the account of Magnolia Swift Homes, Inc., but no contention is made that such guaranty was reduced to writing. A plea of the Statute of Frauds, as set out in section 23-201 T.C.A., would, therefore, have been a complete defense if same had been pleaded. The law is clear in Tennessee, however, that "The statute must be specially pleaded as a defense to a suit upon a promise, agreement, or contract required by the statute to be in writing, where the same is in parol, in order to avoid the contract and defeat the suit." Patton v. McClure (1828), 8 Tenn. 333; Newman v. Carroll (1832), 11 Tenn. 18; Sneed v. Bradley (1856), 36 Tenn. 301; Hudson v. King, (1870), 49 Tnen. 560; Jennings v. Bishop (1883), 3 Shannon's Cases 138; Citty v. Southern Queen Mfg. Co. (1893), 93 Tenn. 276, 24 S.W. 123, 42 Am.St.Rep. 919; Barnes Bros. v. Black Diamond Coal Co. (1898), 101 Tenn. 354, 47 S.W. 498; Bailey v. Henry (1911), 125 Tenn. 390, 143 S.W. 1124; Huffine v.

McCampbell (1923), 149 Tenn. 47, 257 S.W. 80; Gibson County Bank v. Shatz (1930, 12 Tenn.App. 281; Stout v. Fuqua (1937), 20 Tenn. App. 608, 103 S.W.2d 28.

In the case of Gibson County Bank v. Schatz, Owen, J., speaking for this Court, Western Section, said:

"On the question of the Statute of Frauds, this defense was not specially pleaded. Where the Statute of Frauds is relied on as a defense, it must be pleaded; otherwise, a parol contract may be enforced. Citty v. [Southern Queen] Manufacturing Co., 93 Tenn. 276, [24 S.W. 121]; Barnes Bros. v. Cole Co., [Black Diamond Coal Co.] 101 Tenn. 354, [47 S.W. 498); Bailey v. Henry, 125 Tenn. 401, [143 S.W. 1124]; Huffine v. McCampbell, 149 Tenn. 47, 257 S.W. 80." Gibson County Bank v. Schatz, 12 Tenn.App. 285.

In Stout v. Fuqua, 20 Tenn.App. 608, 103 S.W.2d 28, DeWitt, J., speaking for this Court, Middle Section, said:

"The defendant Fuqua is not in a position to invoke the statute of frauds because he did not sign any memorandum, for the reason that he has not pleaded it in his answer to the bill filed by Stout and wife in this cause. It is so well settled in this state as to require no citation of authorities, that the statute must be specially pleaded as a defense to a suit upon a promise, agreement, or contract required by the statute to be in writing, where the same is in parol in order to void the contract and defeat the suit." Stout v. Fuqua, 20 Tenn.App. 610, 103 S.W.2d 28.

In Bates v. Dennis, Anderson, P. J., speaking for this Court, Western Section, said:

"It cannot be doubted that a valid enforcible contract may be created by the oral acceptance of a written offer to sell real property. Nor, for that matter, can it be doubted that where there is no plea of the statute of frauds a parol sale of real property is valid." Bates v. Dennis, 30 Tenn.App. 94, 101, 203 S.W.2d 928, 931.

There is no merit in the contention made by defendant that no consideration for the contract on which defendant was sued was either alleged or proved. The benefit to defendant as a director and officer of Magnolia Swift Homes, Inc. was ample consideration for his oral contract guaranteeing the account of that corporation. In any event, there can be no doubt that the detriment to plaintiff in delivering for the account of Magnolia Swift Homes, Inc. building materials which it would not have delivered without the guaranty made by defendant, constitutes ample consideration for the contract of guaranty. While it is true that such contract of guaranty, under the provisions of the Statute of Frauds, section 23-201 T.C.A., would have had to be in writing to be enforcible, if that statute had been pleaded, that does not change the fact that the oral agreement was supported by a valid consideration; and since the Statute of Frauds was not pleaded, the oral contract of guaranty was enforcible.

As this cause originated in the Court of General Sessions, the pleadings were *ore tenus*. The defense of the Statute of Frauds could, therefore, have been pleaded orally; but the bill of exceptions, as filed, indicates that no effort was made to so plead it. Indeed, the fact that defendant's counsel saw fit to put in writing the defenses which defendant did make, indicates the contrary. In any event, the bill of exceptions would have to show that such defense was made.

■ The recent case of Weaver v. Cromer, Tenn., 392 S.W.2d 835, decided by this Court, Middle Section, February 26, 1965, is conclusive as to the sufficiency of the summons or warrant in the instant case.

■ Defendant's plea of the bankruptcy of Magnolia Swift Homes, Inc., and that the debt sued on in this cause was cancelled by the discharge in bankruptcy of Magnolia Swift Homes, Inc., is wholly without merit, because it is the bankruptcy of Magnolia Swift Homes, Inc. and not the bankruptcy of defendant, which is here pleaded in defendant's effort to bar the suit against him. Magnolia Swift Homes, Inc. was not sued, consequently its bankruptcy and discharge are immaterial. The suit here involved is against defendant on his oral guaranty of the account of Magnolia Swift Homes, Inc., which guaranty, for the reasons hereinabove set out, was enforcible.

All of defendant's assignments of error will be overruled, and the judgment of the Circuit Court of Shelby County will be affirmed. Judgment will be entered in this Court in favor of plaintiff, John A. Denies Sons Company and against the defendant, Dr. Ordie H. King, for $1,496.60, together with interest thereon, from May 7, 1965, the date on which defendant's motion for new trial was overruled.

The costs of the cause, including the costs of the lower courts, as well as the cost of the appeal, will be adjudged against defendant, Dr. Ordie H. King, and the National Surety Corporation, his surety on the appeal bond.

Avery, P.J. (W.S.), and Carney, J., concur.