IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 9, 2017 Session

## 500 BLOCK, LLC v. DONALD BOSCH

**Appeal from the Chancery Court for Knox County**
**No. 180363-2          Clarence E. Pridemore, Jr., Chancellor**

_____

### No. E2016-02449-COA-R3-CV
_____

This case was brought by the landlord of a building that was leased to a limited liability company for purposes of operating a restaurant; the restaurant failed, and the company defaulted on its obligations under the lease and took bankruptcy. The landlord filed suit to recover damages from four persons who had signed agreements guaranteeing performance of the lease to the extent of the guarantors' interest in the lessee. The case proceeded to trial against one guarantor and, after a bench trial, the court dismissed the action, finding that the guaranty lacked consideration and that the guaranty was invalid and unenforceable because only the guarantor signed it. On appeal, the landlord contends that the trial court erred in both respects. Upon a *de novo* review of the record, we reverse the judgment of the trial court and remand the case for entry of a judgment against the guarantor in the amount of $60,037.97 and for a determination of interest on the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN WESLEY MCCLARTY, J., joined.

W. Tyler Chastain and Margo J. Maxwell, Knoxville, Tennessee, for the appellant, 500 Block, LLC.

Thomas S. Scott, Jr. and Christopher T. Cain, Knoxville, Tennessee, for the appellee, Donald A. Bosch.

# OPINION

## I.    FACTUAL AND PROCEDURAL HISTORY

On July 26, 2008, S&W, LLC, entered into a five-year agreement with 500 Block, LLC, to lease property located at 518 South Gay Street in Knoxville, to be used as a "restaurant facility, a deli selling food and food-related items, a take-out service, and a bar serving food items and alcoholic beverages." The lease was executed by Stephanie Balest on behalf of S&W. Page 21 of the Lease contained a "Lease Guaranty Agreement," which read:

> The undersigned, all being members of the Tenant, do hereby absolutely and unconditionally guaranty the prompt performance and payment of all sums due and owing by S&W, LLC under the foregoing lease, including, but not limited to all rents and other obligations for which the Tenant is responsible under the terms of the Lease. The guarantee will be pro-rated to the shareholding of each member of the Tenant and shall be in effect for the initial term of the lease (5 years front rent commencement). There will be no members guarantee for any subsequent team of the lease. The undersigned hereby acknowledge that they have read the foregoing lease on 20 pages and acknowledge the receipt of adequate consideration for the execution of this guaranty and HEREBY WAIVE ANY DEFENSE TO THE ENFORCEMENT HEREOF BASED UPON THE LACK OR INADEQUACY OF CONSIDERATION.
>
> This the 26th day of July, 2008.
>
> _____
> Don Bosch – 10%
>
> _____
> Eric Funnel – 20%
>
> _____
> Stephanie Balest – 70% jointly with Verbruggen
>
> _____
> Marc Verbruggen – 70% jointly with Balest

Ms. Balest and Mr. Verbruggen signed the Lease Guaranty Agreement where their names were listed; Mr. Bosch and Mr. Funnel did not.

October 3, 2008, Mr. Bosch and Donald Funnell[1] signed Limited Lease Guaranty Agreements in which they guaranteed performance to the extent of their respective ten and twenty percent shares in S&W ("the October 3 guaranty").[2] Mr. Bosch's agreement reads in pertinent part:

Guarantor: Donald A Bosch     Landlord:  500 Block, LLC
[address omitted]         [address omitted]

Guarantor's Percentage Share of Rent: 10%

### LIMITED LEASE GUARANTY AGREEMENT

The undersigned, Donald A. Bosch does hereby absolutely and unconditionally guarantee the prompt payment of Guarantor's Percentage Share of Rent ("PSR") due and owing by S & W, LLC under the lease agreement dated July 26, 2008, by and between S & W, LLC and 500 Block, LLC ("Lease"), including, but not limited to all rents and other obligations for which the Tenant is responsible during the initial term of the Lease. . . .The term PSR shall mean and be limited to the percentage set forth as applied to all the rent and additional rent owed but unpaid by tenant under the initial five (5) year term of the Lease, or interest thereon to the extent not prohibited by law.

Guarantor's PSR will only be reduced by sums actually paid or reductions by operation of law, judicial order or equitable principles.  This Guaranty is not contingent upon any demand or collection from any other Guarantor with respect to the Lease, and the obligations of the undersigned will not be reduced by payment from any other Guarantor. . . .

The undersigned does not guarantee any subsequent term of the Lease. The undersigned hereby acknowledges that they have read the Lease and acknowledges the receipt of adequate consideration for the execution of this guaranty and HEREBY WAIVES ANY DEFENSE TO THE ENFORCEMENT THEREOF BASED UPON THE LACK OR INADEQUACY OF CONSIDERATION.

---

[1] Ms. Balest testified that Donald Funnell was not a member of S&W but was the father of Eric and Chad Funnell, who were both members with a 10 percent ownership interest.

[2] Mr. Hill testified that, to the best of his recollection, Tammy Kaousias, an attorney representing S&W, prepared the Limited Lease Guaranty Agreements.

This the 3rd day of October, 2008

/s/
_____

Donald A. Bosch     10%

The restaurant opened on October 21, 2009, and rent commenced on November 21. In September 2010, S&W failed to pay rent and property taxes; 500 Block gave notice of default under the lease to S&W, Ms. Balest, Mr. Verbruggen, Mr. Bosch, and Mr. Donald Funnell. In that letter, 500 Block's counsel stated that "the Landlord is prepared to seek all available remedies in law and at equity against the Tenant and the Guarantors pursuant to the terms of the Lease." Thereafter, S&W filed for bankruptcy, and the lease was terminated by order of the bankruptcy court.

500 Block brought suit on May 9, 2011 against Mr. Verbruggen, Ms. Balest, Mr. Bosch, and Mr. Funnell to recover on the guaranty agreements seeking damages from Mr. Bosch in the amount of $93,426.64, plus late fees, attorney's fees and costs. Mr. Bosch answered, denying liability under the guaranty and asserting as affirmative defenses that the guaranty he signed failed for lack of consideration; that 500 Block failed to mitigate its damage; that 500 Block failed to provide timely and appropriate notices of default; and that 500 Block materially breached the lease.[3] 500 Block moved for summary judgment twice; both motions were denied. In the order denying the second motion, the court held "that issues of material fact exist as to consideration for the guaranty at issue and Mr. Bosch's defense related to alleged breaches of the Lease Agreement by Plaintiff."

A bench trial was held on November 8, 2016, at which the following witnesses testified: Timothy Hill, a member of 500 Block and its custodian of records; Stephanie Balest; John Craig, chief manager of 500 Block; and Donald Bosch. Seventeen exhibits were entered into evidence. At the conclusion of 500 Block's case in chief, Mr. Bosch moved for dismissal pursuant to Rule 41.02 of the Tennessee Rules of Civil Procedure; the motion was denied. The court then advised counsel that it was "going to give you a ruling up here today" and, without hearing further argument or proof, proceeded to render the following ruling:

> Two things this Court finds is: One, that I've heard nothing in the testimony or the documents or exhibits that show me any type of consideration that was given to Mr. Bosch in exchange for his signing of the limited lease guaranty agreement. And, secondly, you can look at the original lease which was signed by 500 Block and S & W, section 38,

---

[3] Mr. Verbruggen, Ms. Balest, and Mr. Funnell filed motions to dismiss, which were denied by the trial court; they subsequently filed answers and ultimately settled with 500 Block and were dismissed by agreed orders entered in October 2012.

which that page was also initialed by the parties, modification of agreement: "Any modification of this -- of this agreement or additional obligation assumed by either party in connection with this agreement shall be binding only in evidence in a writing signed by each party or an authorized representative of each party."

Looking at the October 3rd limited lease guaranty agreement signed by Mr. Bosch, he is the only individual that signed the agreement. No one on behalf of 500 Block signed that agreement, and, therefore, this Court finds that to be an invalid and unenforceable agreement also. Therefore, the case is dismissed and cost is taxed to the petitioners.

A final order was entered on November 18, 2016, incorporating the oral ruling and dismissing the case with prejudice.

500 Block appeals, raising the following issues:

1. Did the Trial Court err in finding the Limited Lease Guaranty Agreement executed by Donald Bosch lacked consideration for enforcement?
2. Did the Trial Court err in finding the Limited Lease Guaranty Agreement executed by Donald Bosch was invalid and unenforceable because it was not also executed by 500 Block, LLC?
3. Did the Trial Court err in dismissing the Complaint of 500 Block seeking judgment on a Limited Lease Guaranty Agreement executed by Donald Bosch?

## II. ANALYSIS

Our scope of review of the findings of fact of a trial court sitting without a jury is *de novo*, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Nw. Tennessee Motorsports Park, LLC v. Tennessee Asphalt Co.,* 410 S.W.3d 810, 816 (Tenn. Ct. App. 2011) (citing *Wood v. Starko,* 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006)). If the trial court made no specific findings of fact, then we must look to the record to determine where the preponderance of the evidence lies. *Gooding v. Gooding*, 477 S.W.3d 774, 783 (Tenn. Ct. App. 2015) (citing *Lovlace v. Copley,* 418 S.W.3d 1, 36 (Tenn. 2013)*; Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997); *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.,* 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005). Review of questions of law is *de novo* with no presumption of correctness. *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.,* 58 S.W.3d 706, 710 (Tenn. 2001).

In this case, the court did not make specific findings of fact; consequently, we shall "conduct our own de novo review to first determine where the preponderance of the evidence lies and then determine whether the evidence, when applied to the applicable

legal principles, provides a proper factual foundation for the decision challenged on appeal." *Gooding v. Gooding*, 477 S.W.3d at 783.

The law governing the enforceability of a contract of guaranty was set forth in *Kubota Tractor Corp. v. Fugate Implement Co., Inc.*:

> A guaranty is a contract by which one person is bound to another for the fulfillment of a promise or engagement of a third party. It is a collateral promise or undertaking by one person to answer for the payment of some debt or the performance of some contract or duty in case of default of another, who in the first instance is liable. It is a non-negotiable instrument and thus is controlled by the rules applicable thereto. *Villines v. Parham-Lindsey Grocery Co.,* 6 Tenn. App. 254, 261 ([Tenn. Ct. App.] 1927). *See also Kordick v. Merchants National Bank & Trust Co. of Indianapolis,* 496 N.E.2d 119, 223 (Ind. App.1986) (holding that contract law governs construction of guarantys, not the UCC); *Guaranty,* 38 Am.Jur.2d § 70.
>
> Guarantys on a commercial contract are special contracts in Tennessee law. In order to facilitate the extension of credit, Tennessee does not favor guarantors and will construe a guaranty against the guarantor as strongly as the language will permit. *Farmers-Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn. 1975); *Hassell-Hughes Lumber Co. v. Jackson,* 33 Tenn. App. 477, 486, 232 S.W.2d 325, 329 (1949). This principle of law was settled in this state by the case of *Bright v. McKnight,* 33 Tenn. 158 (1853) wherein our Supreme Court held that "a guarantor shall be held bound to the full extent of what appears to be his engagements, and the rule in expounding these undertakings is that the words of the guaranty are to be taken as strongly against the guarantor as the sense will admit." *Id.* at 168.

1989 WL 57477, at *2–3 (Tenn. Ct. App. June 2, 1989). A contract of guaranty requires consideration to be binding and enforceable. *Galleria Associates, L.P. v. Mogk,* 34 S.W.3d 874, 876 (Tenn. Ct. App. 2000) (citing *Volunteer State Bank v. Dreamer Productions, Inc.,* 749 S.W.2d 744, 747 (Tenn. Ct. App. 1987)).

## A. CONSIDERATION

On appeal, 500 Block argues that the trial court erred in refusing to enforce the guaranty as written, including its provision acknowledging receipt of adequate consideration and waiving the defense of lack of consideration. 500 Block also argues that, regardless of the provision, the guaranty was based on sufficient consideration. In response, Mr. Bosch argues that because he did not sign the guaranty on page 21 of the lease, the guaranty he executed on October 3 was a gratuitous promise, unsupported by consideration, and therefore unenforceable.

6

In determining whether adequate consideration existed to support the October 3 guaranty, we are instructed by the holding of *Galleria Associates, L.P. v. Mogk,* a case in which the guaranty of a commercial lease was also at issue, in which this Court explained:

> Consideration for a contract of guaranty may be an extension of credit to the guaranteed, an extension of time for the payment of the debt, or detrimental reliance by the creditor on the promise of the guarantor to guarantee payment. *See King v. John A. Denies Sons Co.,* 56 Tenn. App. 39, 404 S.W.2d 580, 588 (1966); *Institutional Jobbers Co. v. Woodson,* No. 163, Blount County, 1989 WL 83289 (Tenn. Ct. App. filed July 28, 1989, at Knoxville) (citing *Allen, Asher & Co. v. Morgan,* 24 Tenn. (5 Hum.) 624, 626 ([Tenn.] 1845)).

34 S.W.3d 874, 876 (Tenn. Ct. App. 2000). Consideration also exists "'when the promisee does something that it is under no legal obligation to do or refrains from doing something which it has a legal right to do.'" *GuestHouse Int'l.*, 330 S.W.3d at 188 (quoting *Brown Oil Co. v. Johnson,* 689 S.W.2d 149, 151 (Tenn. 1985); *Pearson v. Garrett Fin. Servs., Inc.,* 849 S.W.2d 776, 779 (Tenn. Ct. App. 1992)). Our Supreme Court has stated, "A guaranty, although executed subsequently to the creation of the principal obligation, if given in fulfillment of an agreement on the faith of which the principal obligation was created, is deemed contemporaneous in effect, and requires no other consideration." *S. M. Williamson & Co. v. Ragsdale*, 95 S.W.2d 922, 925 (Tenn. 1936). "'If a contract is in writing and signed by the party sought to be bound, such is *prima facie* evidence of consideration. ... The burden to overcome this presumption is on the party asserting lack of consideration.'" *GuestHouse Int'l,* 330 S.W.3d at 189 (quoting *Toliver v. Wall,* No. M2006-00910-COA-R3-CV, 2007 WL 1890648, at *2 (Tenn. Ct. App. June 28, 2007)).

In this case, Mr. Hill testified that 500 Block had to have "a hundred percent guarantees" from its potential tenants in the building to "cover[] the value of the lease, which will in turn help support the debt service as it . . . relates to the bank." Mr. Hill testified at length regarding the negotiations which led to the lease, including the terms and guarantees, and that the guarantor coverage for the S&W lease totaled 100 percent when the guaranties from Mr. Bosch and Mr. Funnell were received on October 8, 2008. The preponderance of the evidence clearly shows that the October 3 guaranty was a substitute for that on page 21 of the Lease and, along with the guarantys of Ms. Balest, Mr. Verbruggen, and Mr. Funnel, memorialized each S&W member's agreement to guarantee S&W's obligations up to the limit of each member's ownership interest. The promises in those guarantys served to induce 500 Block to accept the lease on July 26 without Mr. Bosch's signature, when it had no obligation to do so, and was sufficient consideration. *See GuestHouse Int'l.*, 330 S.W.3d at 188.

7

Moreover, in the October 3 guaranty, as in the guaranty on page 21 of the Lease, Mr. Bosch acknowledged the receipt of adequate consideration and waived any defense based on the lack or inadequacy of consideration. At trial, Mr. Bosch testified that he is an attorney with 28 years of experience; that he signed the limited lease guaranty agreement on October 3, 2008; that he "read it briefly" and "knew what it was"; and that he "signed it to get [S&W's attorney] to end the conversations and calls." Mr. Bosch has cited no evidence to overcome the presumption of sufficient consideration; further, the October 3 guaranty needed no independent consideration. *See S. M. Williamson & Co*, 95 S.W.2d at 925.

Considering all the evidence in the record, it is clear that the October 3 guaranty was supported by adequate consideration. The proof and the record in this case show that the lease was between S&W, of which Mr. Bosch was a member, and 500 Block for a restaurant that S&W was able to open in 2009 and operate on the leased premises for nearly a year. 500 Block relied on Mr. Bosch's signed promise to guarantee a percentage of the payment of rent, and S&W received the benefit of the leased premises for several months.

## B. MODIFICATION

As an alternative ground for holding that the October 3 guaranty was unenforceable, the trial court concluded that Section Thirty-Eight of the lease, governing modifications of the lease,[4] required the guaranty to be signed by 500 Block as well as Mr. Bosch; the court did not make any factual findings or cite authority with reference to this holding. Upon our *de novo* review, we reach a contrary conclusion.

There is no evidence that the October 3 guaranty modified or imposed additional obligations on either party. The Lease Guaranty Agreement, which is a part of the lease executed on July 26, 2008, states that Mr. Bosch would guarantee S&W's obligations to 500 Block up to his 10 percent ownership interest; Mr. Bosch likewise guarantees S&W's obligations up to his 10 percent ownership interest in the October 3 guaranty. Thus the October 3 guaranty did not modify Mr. Bosch's obligation in any way; as held earlier, the October 3 guaranty was a substitute for his signature on the guaranty contained in the lease.

In any event, contrary to the court's holding, the fact that the October 3 guaranty was not signed by a representative of 500 Block is irrelevant; only Mr. Bosch's signature is required to make the guaranty enforceable. *See* Tenn. Code Ann. § 29-2-101(a); *In re Dickerson's Estate*, 600 S.W.2d 714, 716 (Tenn. 1980).

---

[4] Section Thirty-Eight is entitled "Modification of Agreement" and reads, "Any modification of this agreement or additional obligation assumed by either party in connection with this agreement shall be binding only if evidenced in a writing signed by each party or an authorized representative of each party."

We conclude that the evidence preponderates against the holding that the October 3 guaranty was unenforceable, and that the judgment dismissing the case is not in accordance with the applicable legal principles.

## III. CONCLUSION

In light of our holding that the October 3 guaranty is enforceable, we address 500 Block's contention that it is entitled to a judgment in the amount of undisputed damages. *See* Tennessee Rule of Appellate Procedure 36(a). At trial, Mr. Hill testified that Mr. Bosch owed $60,037.93, which was ten percent of the $600,379.30 in rent and other charges due from S&W under the terms of the lease. Mr. Bosch did not dispute this amount or introduce any contrary evidence and does not contest the amount on appeal.

Having concluded that Ms. Bosch is bound by the October 3 guaranty, and in light of the fact that the amount of his liability is not disputed, we enter judgment in favor of 500 Block against Mr. Bosch in the amount of $60,037.93 plus interest from the date of judgment; we remand this case to the trial court for a determination of the amount of interest.

_____

RICHARD H. DINKINS, JUDGE