IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

# THE GALLERIA ASSOCIATES, L.P. v. WILLIAM MOGK, III, ET AL.

**Direct Appeal from the Chancery Court for Williamson County**
**No. II-25638      Russ Heldman, Chancellor**

---

**No. M1999-00470-COA-R3-CV - Decided May 25, 2000**

---

This is an action against a guarantor of a commercial lease. After a hearing, the trial court dismissed the landlord's complaint finding that the guaranty lacked consideration and that the landlord had failed to offer proof regarding handwritten portions of the lease addressing the commencement date of the lease. The landlord contends that the trial court erred in both respects. We agree, and reverse the judgment of the trial court and remand the cause for the assessment of damages and attorney fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

CANTRELL, P.J., M.S., delivered the opinion of the court, in which CAIN and COTTRELL, JJ. joined.

A. Scott Derrick, Nashville, Tennessee, for the appellant, The Galleria Associates, L.P.

Thomas L. Whiteside, Nashville, Tennessee, for the appellees, William Mogk, III and Marilyn Mogk.

## OPINION

### I.

In 1995, the appellant and CG&C Enterprises, Inc. ("CG&C") entered into a ten year commercial lease for space in the Cool Springs Galleria Mall. The lease was signed by CG&C on March 30, 1995, and the appellees executed a guaranty on the same date. The lease was signed by the appellant on April 20, 1995. The guaranty provided that the appellees were responsible for CG&C's payment of rent and other expenses "[f]or the first three (3) Lease Years of the Term of the Lease." The appellant turned possession of the premises over to CG&C on August 17, 1995 and the CG&C store opened on October 18, 1995.

In 1998, the appellant instituted a detainer action against CG&C. The record indicates that the appellant was awarded a judgment for possession of the leased premises and damages. On August 6, 1998, the appellant filed a complaint against the guarantors alleging that CG&C was in default of its lease obligations and that the guarantors were liable for the unpaid rent.

After a hearing, the trial court dismissed the appellant's claim finding that, although the guaranty stated that it was "[i]n consideration of the foregoing Lease," the lease was not in existence at the time the guaranty was executed. The trial court further found that the appellant had failed to offer proof regarding handwritten portions of the lease addressing the commencement date of the lease. This appeal followed.

## II.

The appellant contends that the trial court erred in dismissing the complaint. Specifically, the appellant argues that there was consideration to support the enforcement of the guaranty signed by the appellees.

We first note that guarantors are not favored under our law. *Wilson v. Kellwood Co.*, 817 S.W.2d 313, 318 (Tenn. Ct. App. 1991). In addition, a guarantor in a commercial transaction is to be held to the full extent of his engagements and the words of the guaranty will be taken as strongly against the guarantor as the sense will admit. *Id.* Nevertheless, a contract of guaranty requires consideration to be binding and enforceable. *Volunteer State Bank v. Dreamer Productions, Inc.*, 749 S.W.2d 744, 747 (Tenn. Ct. App. 1987). Generally, "[c]onsideration may be either a benefit to the promisor or a detriment to or obligation upon the promisee." 7 Tenn. Jur. *Contracts* §28 (1997). Consideration for a contract of guaranty may be an extension of credit to the guaranteed, an extension of time for the payment of the debt, or detrimental reliance by the creditor on the promise of the guarantor to guarantee payment. *See King v. John A. Denies Sons Co.*, 404 S.W.2d 580, 588 (Tenn. Ct. App. 1966); *Institutional Jobbers Co. v. Woodson*, No. 163, Blount County (Tenn. Ct. App. filed July 28, 1989, at Knoxville) (citing *Allen, Asher & Co. v. Morgan*, 24 Tenn. (5 Hum.) 624, 626 (1845)).

In this case, the appellees signed a guaranty "[i]n consideration of the foregoing lease." The lease at issue was between CG&C and the appellant for a store in the Cool Springs Galleria Mall which, the record indicates, was owned and operated by the appellees. It appears that not only did the appellant detrimentally rely on the appellees' promise to guarantee the payment of rent for such store, but also that the lessees received the benefit of the leased premises for a period of three years. Therefore, we find that there was sufficient consideration to support the contract of guaranty signed by the appellees.[1]

---

[1] The appellees point out, as did the trial court, that the guaranty was signed approximately twenty days before the "foregoing lease" was executed. As the guaranty states that it is "in consideration of the foregoing lease" and such lease had not been executed by the time the guaranty was signed, the appellees argue that the guaranty lacks consideration and is therefore unenforceable. However, most guaranties are executed before the contracting parties are bound; they are part of the consideration that makes the deal happen. *See Dunlop Tire & Rubber Corp. v. Service Merchandise Co.*, 667 S.W.2d 754 (Tenn. Ct. App. 1983); *Hickory Springs Mfg. Co. v. Evans*, 541 S.W.2d 97 (Tenn. 1976).

## III.

The next issue that must be addressed is the extent of the appellees' liability as guarantors of the lease between CG&C and the appellant. The contract of guaranty provided that the appellees were unconditionally and absolutely responsible to the appellant for CG&C's rent and other charges "[f]or the first three (3) Lease Years of the Term of the Lease." The lease term was defined in section 1.2 of the lease as a period commencing "on the earlier of (1) April 15, 1995, May 1, 1995, the date which is Sixty (60) days following Landlord's tender of possession of the Leased Premises, or (2) the date on which Tenant opens for business in the Leased Premises." However, handwritten notations on the lease crossed out "April 15, 1995, May 1, 1995, the date which is Sixty (60) days following Landlord's tender of possession of the Leased Premises" and replaced the phrase with "the date which is ninety (90) days following Landlord's tender of possession of the leased premises." The trial court pointed out that the appellant offered no proof as to when these handwritten notations were added to the lease and that this was "a failure of [the appellant's] proof." We disagree, because the uncontradicted proof shows that the parties were in agreement as to when the lease term began.

"The cardinal rule for the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). In construing a contract, the words expressing the parties' intentions should be given their usual, natural and ordinary meaning. *Taylor v. White Stores, Inc.*, 707 S.W.2d 514, 516 (Tenn. Ct. App. 1985). In determining the intentions of the parties, the Tennessee Supreme Court has held:

> The evidence of intent is to be found in the language used by the parties in the guaranty agreement, considered in the light of their respective interests and other relevant circumstances existing at the time the guaranty was executed, and in the practical construction given to it by the parties, as disclosed by their actions subsequent to its execution.

*City of Columbia v. CFW Construction Co.*, 557 S.W.2d 734, 739 (Tenn. 1977).

The rule of practical construction states that the interpretation placed upon a contract by the parties thereto, as shown by their acts, will be adopted by the court and that to this end not only the acts but the declarations of the parties may be considered. *Hamblen County v. City of Morristown*, 656 S.W.2d 331, 335 (Tenn. 1983). In addition, "'[i]f the conduct of the parties subsequent to a manifestation of intention indicates that all of the parties placed a particular interpretation upon it, that meaning is adopted if a reasonable person could attach it to the manifestation.'" *Id.* (*quoting* Restatement of Contracts §235).

We find it instructive that this Court has previously held:

> Evidence of the terms of an agreement is better afforded by the acts of the parties under it while harmonious and practical construction reflects their intention, than

when subsequent differences have impelled them to resort to law, and one of them then seeks a construction at variance with the practical construction they have placed upon it of what was intended by its provisions.

*McDowell v. Rambo*, 111 S.W.2d 892, 899(Tenn. 1937) (citations omitted).

In this case, the record contains no direct testimonial evidence regarding how the appellees viewed the construction of the phrase "lease term" as it related to the term of the guaranty. However, the record establishes that CG&C began to pay rent on October 18, 1995, the date on which the CG&C store opened for business. In addition, a letter sent to the appellees from the appellant's General Manager states "[p]lease note that in accordance with Section 1.2 of the lease, the lease term shall commence ninety (90) days from August 17, 1995 [the date the appellant tendered possession of the premises to CG&C] or the date you open for business in the leased premises, whichever of such two dates shall first occur." Another letter sent to CG&C from the appellant's accounting department states that "[t]he term of [CG&C's] lease will be from [the] commencement date of October 18, 1995 . . . ." There is no evidence that the appellees challenged or questioned the statements in these letters prior to the present litigation.

In light of the forgoing principles of law and the evidence in this case, we find that the parties interpreted the lease term as beginning on October 18, 1995. Therefore, we find that the appellees obligation as guarantors for the first three years of the lease term continued through October 18, 1998. According to the record, CG&C was last current in its rent obligations in May of 1998. The appellees are thus liable for CG&C's monetary lease obligations through October 18, 1998. Although at trial the appellant asserted that as of October 18, 1998, CG&C owed the appellant $53,228.25 in rent and other charges under the terms of the lease, the record is not clear on this issue. Accordingly, we remand this case to the trial court for a determination of the amount actually owed by CG&C as of October 18, 1998 under the terms of the lease.

Furthermore, the contract of guaranty provides that "in the event this Guaranty is placed in the hands of an attorney for enforcement, Guarantor shall reimburse Landlord for all expenses incurred, including expenses and reasonable attorney's fees incurred through the trial courts and all appeals." The appellees are therefore liable for the appellant's expenses and reasonable attorney fees incurred as a result of this litigation. We remand this issue to the trial court for a determination of such fees.

Accordingly, the judgment of the trial court is reversed, and the cause remanded to the Chancery Court for Williamson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellees, William Mogk, III and Marilyn Mogk.