ACCEPTED
04-14-00827-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/24/2015 11:45:26 AM
KEITH HOTTLE
CLERK

# NO. 04-14-00827-CV

_____

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
AT SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
03/24/2015 11:45:26 AM
KEITH E. HOTTLE
Clerk

_____

**PT INTERMEDIATE HOLDING, INC. AND
PERSONAL TOUCH HOLDING CORP.,**
**Appellants,**
**v.**
**LMS CONSULTING LLC,**
**Appellee.**

On Appeal from the 45th Judicial District Court of Bexar County, Texas
(Honorable Peter Sakai, of the 225th Judicial District Court, Presiding)
Trial Court Cause No. 2014-CI-00450

_____

**APPELLANTS' REPLY BRIEF**

_____

Monte F. James
State Bar No. 10547520
mjames@jw.com
Joshua A. Romero
State Bar No. 24046754
jromero@jw.com
Kimberly A. Gdula
State Bar No. 24052209
kgdula@jw.com
**JACKSON WALKER L.L.P.**
100 Congress Avenue, Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 – Fax
**COUNSEL FOR APPELLANTS**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ..................................................................................i

**TABLE OF AUTHORITIES** ........................................................................ ii

1. LMS CONSULTING'S NEW JURISDICTIONAL ARGUMENTS WERE NOT RAISED IN THE TRIAL COURT AND THEREFORE CANNOT BE CONSIDERED ON APPEAL. ..........................................................................1

   A. *LMS Consulting never asserted that Appellants breached any contracts with LMS Consulting*..........................................2

   B. *LMS Consulting never asserted that Appellants recruited employees in Texas or contracted with Texas residents*.............7

2. LMS CONSULTING'S JUDICIAL ADMISSIONS ESTABLISH THAT THERE IS NO BASIS FOR JURISDICTION OVER APPELLANTS. ....................10

   A. *The doctrine of judicial admissions*. ...........................................11

   B. *LMS Consulting judicially admitted that the Texas Entities entered into the recruitment and staffing agreements at issue*. .......................................................................11

   C. *LMS Consulting judicially admitted that the Texas Entities recruited employees in Texas and contracted with Texas residents*. .................................................................13

   D. *LMS Consulting's jurisdictional argument based on Appellants' alleged tortious interference fails*. .........................13

3. THE EXERCISE OF JURISDICTION OVER APPELLANTS DOES NOT COMPORT WITH FAIR PLAY AND SUBSTANTIAL JUSTICE..........................15

4. LMS CONSULTING'S VEIL-PIERCING THEORY OF JURISDICTION FAILS. ..........................................................................................17

**CONCLUSION AND PRAYER** ..........................................................................19

**RULE 9.4 CERTIFICATE OF COMPLIANCE** ................................................21

**CERTIFICATE OF SERVICE** ...........................................................................20

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **PAGE(S)**

*Coleman v. Klockner & Co. AG*,
    180 S.W.3d 577 (Tex. App—Houston [14th Dist.] 2005, no pet.) ............5, 6, 10

*Conner v. Conticarriers & Terminals, Inc.*,
    944 S.W.2d 405 (Tex. App.—Houston [14th Dist.] 1997, no writ)...................18

*Favour Leasing, LLC v. Mulligan*,
    No. 05-13-01000, 2014 Tex. App. LEXIS 9180 (Tex. App.—Dallas
    Aug. 19, 2014, no pet.) ........................................................................9, 13, 14, 15

*Hargrave v. Fibreboard Corp.*,
    710 F.2d 1154 (5th Cir. 1983) ....................................................................15, 16

*Hennigan v. I.P. Petroleum Co.*,
    858 S.W.2d 371 (Tex. 1993) ...............................................................................11

*Horizon/CMS Healthcare Corp. v. Auld*,
    34 S.W.3d 877 (Tex. 2000)............................................................................12, 13

*In re A.E.A.*,
    406 S.W.3d 404 (Tex. App.—Fort Worth 2013, no pet.)...................................11

*Low v. Henry*,
    221 S.W.3d 609 (Tex. 2007) ...............................................................................7

*Mack Trucks, Inc. v. Tamez*,
    206 S.W.2d 572 (Tex. 2006) ...............................................................................2

*Marin Real Estate Partners, L.P. v. Vogt*,
    373 S.W.3d 57 (Tex. App.—San Antonio 2011, no pet.) ...........................2, 3, 4

*Moncrief Oil Int'l, Inc. v. OAO Gazprom*,
    414 S.W.3d 142 (Tex. 2013) ...............................................................................14

*PHC-Minden v. Kimberly-Clark Corp.*,
    235 S.W.3d 163 (Tex. 2007) .........................................................................17, 18

*Rippey v. Chase Home Fin., LLC*,
No. 02-13-00190, 2014 Tex. App. LEXIS 2911 (Tex. App.—Fort Worth
Mar. 13, 2014, no pet.)..................................................................................10, 11

*Riverside Exports Inc. v. B.R. Crane & Equip., LLC,*
362 S.W.3d 649 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).............17

*Siskind v. Villa Found. For Educ., Inc.*,
642 S.W.2d 434 (Tex. 1982) ...............................................................................5

*Velco Chems., Inc. v. Polimeri Europa Americas, Inc.*,
No. 14-03-00395, 2004 Tex. App. LEXIS 8133 (Tex. App.—Fort Worth
Sept. 7, 2004, no pet.) .......................................................................................11

*Woodward v. AFI, S.A.*,
No. 05-94-01498, 1995 Tex. App. LEXIS 3540 (Tex. App.—Dallas July
31, 1995, no pet.) ......................................................................................*passim*

**OTHER AUTHORITIES**

TEX. R. APP. P. 33.1(a)(1) ..........................................................................................2

U.S. CONSTITUTION ..................................................................................................14

TO THE HONORABLE JUSTICES OF THE FOURTH COURT OF APPEALS:

Apparently recognizing the weakness of its veil-piercing theory of jurisdiction, Appellee LMS Consulting LLC ("LMS Consulting") now asserts for the first time on appeal several new theories of jurisdiction. These new-found arguments fail for the following reasons:

*First*, they were not raised in the trial court and are therefore waived.

*Second*, LMS Consulting's judicial admissions negate its new jurisdictional arguments. It judicially admitted that it contracted only with the Texas Entities, and not with Appellants. It also judicially admitted that Appellants did not recruit employees in Texas or contract with Texas residents.

*Third*, LMS Consulting's allegations of tortious interference against Appellants fail to establish personal jurisdiction.

*Fourth*, LMS Consulting's veil-piercing theory of jurisdiction—the only theory it asserted in the trial court—fails as a matter of law.

Each of these independent grounds for rejecting LMS Consulting's jurisdictional arguments is discussed below.

1.  **LMS CONSULTING'S NEW JURISDICTIONAL ARGUMENTS WERE NOT RAISED IN THE TRIAL COURT AND THEREFORE CANNOT BE CONSIDERED ON APPEAL.**

In its response brief, LMS Consulting argues for the first time on appeal that Appellants[1] failed to negate: (1) jurisdiction arising out of Appellants' recruitment and staffing agreements with LMS Consulting; and (2) the allegation that Appellants recruited employees in Texas and contracted with Texas residents. As

---

[1] "Appellants" refer collectively to PT Intermediate Holding, Inc. ("PT Intermediate") and Personal Touch Holding Corp. ("Personal Touch Holding").

1

set forth below, LMS Consulting never raised these jurisdictional arguments in the trial court and, therefore, they may not be considered on appeal. *See* TEX. R. APP. P. 33.1(a)(1) (arguments not raised in trial court are waived on appeal); *Mack Trucks, Inc. v. Tamez*, 206 S.W.2d 572, 577 (Tex. 2006) ("Except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties."). As this Court has explained, "[e]ven constitutional error can be waived if not raised in the trial court." *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 83 (Tex. App.—San Antonio 2011, no pet.).

A. ***LMS Consulting never asserted that Appellants breached any contracts with LMS Consulting.***

LMS Consulting sued, among others, the two Texas Entities[2] and pled that the two Texas Entities did business as "Personal-Touch Home Care, Inc." C.R. 269.[3] It defined the two Texas Entities collectively as "Personal-Touch." *Id.* It never pled that *Appellants* are "Personal Touch Home Care, Inc.," the argument it now asserts on appeal. Instead, it alleged that the *Texas Entities* are "Personal

---

[2] The "Texas Entities" refer collectively to PT Home Services of Dallas, Inc. and PT Home Services of San Antonio, Inc.

[3] LMS Consulting's petition names "PT Homes Services of Dallas, Inc. **d/b/a Personal-Touch Home Care Inc**." and "PT Home Services of San Antonio, Inc. **d/b/a Personal-Touch Home Care, Inc.**" C.R. 269 (emphasis added). LMS Consulting's petition does not even allege that Appellants did business as "Personal-Touch Home Care, Inc." The contracts at issue are between LMS Consulting and "Personal-Touch Home Care, Inc.," an entity that LMS Consulting asserts are d/b/a's for the Texas Entities. *Id.* at 271. Additionally, LMS Consulting pled that the Texas Entities "each hold themselves out as doing business under a single name—'Personal-Touch Home Care, Inc.'" *Id.* at 278.

Touch Home Care Inc."[4] LMS Consulting's petition separately defined Appellants Personal Touch Intermediate Holding Corp. as "PT Intermediate" and Personal Touch Holding Corp. as "Personal Touch Holding." *Id.* As discussed below, LMS Consulting did not plead—much less argue in opposition to Appellants' special appearances—that it contracted with Appellants. In fact, it pled the opposite—that it contracted with the Texas Entities. Accordingly, it cannot assert on appeal its new jurisdictional arguments.

LMS Consulting's argument in the trial court for personal jurisdiction over Appellant Personal Touch Holding was as follows: "Defendant PT Holding is subject to personal jurisdiction in this Court because it controls the internal business operations and affairs of both Personal-Touch Dallas and Personal-Touch San Antonio." C.R. 331. Similarly, its argument for jurisdiction over Appellant PT Intermediate was as follows: "Defendant PT Intermediate is subject to personal jurisdiction in this Court because it is the alter ego of both Personal-Touch Dallas and of Personal-Touch San Antonio." *Id.* at 183.[5]

---

[4] LMS Consulting also argued at the special appearance hearing that Personal-Touch Home Care of New York was "Personal Touch Home Care, Inc." R.R. 30:8-15; *see also id.* at 35:8-12 ("THE COURT: And then you're saying that Personal Touch-Home Care, Inc. is actually the Personal-Touch Home Care of New York, Inc.? MR. MORA: Yes, Your Honor.").

[5] At the special appearance hearing, LMS Consulting's argument focused exclusively on Personal Touch Holding. It did not address in any substantive manner jurisdiction over Appellant PT Intermediate. *See generally* R.R. 57:1–72:2.

LMS Consulting unambiguously alleged in its petition that the *Texas Entities*—which it defined in the petition as "Personal-Touch"—were parties to and breached the contracts at issue:

- "Personal-Touch entered into a series of contracts with LMSC whereby LMSC agreed to provide recruiting and/or staffing services. . . ." C.R. 274 (emphasis added).

- "Personal-Touch entered into and breached the following Contract Staffing Agreements ('*Staffing Agreements*') with LMSC. . . ." *Id.* (emphasis added).

- "Personal-Touch entered into the following written Recruiting Fee Agreements ('*Recruiting Agreements*') with LMSC. . . ." *Id.* at 276 (emphasis added).

- "Under the terms of the Staffing Agreements, Personal-Touch was obligated to pay to LMSC an amount no less than the agreed rate times an agreed minimum number of units for each Contractor provided by LMSC under the Staffing Agreements. . . ." *Id.* (emphasis added).

- "Certain of the Staffing Agreements included a provision permitting Personal-Touch to hire the LMSC provided Contractor as an employee of Personal-Touch. . . ." *Id.* (emphasis added).

- "Under the Recruiting Agreements, Personal-Touch agreed to pay a recruiting fee to LMSC for each candidate. . . ." *Id.* at 277 (emphasis added).

- "Personal-Touch, however, have failed and refused to pay amounts owed to LMSC under the terms of the Recruiting Agreements." *Id.* (emphasis added).

- "As a result of Personal Touches' [sic] breaches of their contractual obligations to LMSC under the Staffing Agreements and the Recruiting Agreements, LMSC sent demand letters. . . ." *Id.* (emphasis added).

4

Thus, while LMS Consulting now argues that Appellants "failed to negate jurisdiction" arising from Appellants' alleged breach of the recruiting and staffing contracts, the fact is that LMS Consulting never alleged that Appellants entered into any such contracts with LMS Consulting.[6] As set forth above, it specifically pled to the contrary—that the *Texas Entities* entered into the subject contracts. As such, LMS Consulting is now barred from arguing on appeal that jurisdiction exists over Appellants because they entered into contracts with LMS Consulting.

The Houston Court of Appeal's decision in *Coleman v. Klockner & Co. AG*, 180 S.W.3d 577 (Tex. App—Houston [14th Dist.] 2005, no pet.), is instructive on this point. In *Coleman*, the plaintiff argued for the first time on appeal that the court had personal jurisdiction over the defendants based on an alter-ego theory. The plaintiff asserted that it did not waive its new jurisdictional argument because fairness and the lack of surprise supported a finding of no waiver. The appellate court disagreed, noting that the plaintiff bears the burden to plead sufficient grounds for personal jurisdiction. *Id.* at 582. The court held that, "[w]hile avoidance of surprise to the opposing party is one of the justifications requiring a

_____

[6] As courts have explained, a non-resident defendant does not have to "negate 'every possible ground in the universe,' but rather the acts in Texas *alleged by the plaintiff* to support personal jurisdiction." *Woodward v. AFI, S.A.*, No. 05-94-01498, 1995 Tex. App. LEXIS 3540, at *25 (Tex. App.—Dallas July 31, 1995, no pet.) (quoting *Scott v. Huey L. Cheramie, Inc.*, 833 S.W.2d 240, 241 (Tex. App.—Houston [14th Dist.] 1992, no writ)) (emphasis added); *see also Siskind v. Villa Found. For Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982). As set forth herein, LMS Consulting did not plead or allege the new bases for jurisdiction on which it now relies. Accordingly, Appellants had no obligation to negate the new contentions. In any event, Appellants' opening brief negated LMS Consulting's jurisdictional arguments.

party to plead a theory relied upon, an equally important justification is to prevent an appellate court from reversing an otherwise error-free judgment based on an argument that was not raised in the trial court." *Id.* at 587. The court, therefore, refused to consider the plaintiff's jurisdictional argument raised for the first time on appeal. *See id.* The same result is appropriate here, where LMS Consulting is relying on a jurisdictional argument it failed to assert in the trial court.

LMS Consulting attempts to conceal this fatal flaw by citing a partial allegation in its pleading that "Defendants entered into valid and enforceable Staffing Agreements with LMSC" and "Defendants entered into valid and enforceable Recruiting Agreements with LMSC." Appellee Br. 17. But the entirety of the allegations—and the portion LMS Consulting omits in its response brief—state: "***As set forth in detail above***, Defendants entered into valid and enforceable Staffing Agreements with LMSC" and "***[a]s set forth in detail above***, Defendants entered into valid and enforceable Recruit Agreements with LMSC." C.R. 279.[7] The qualifier "*as set forth in detail above*" is key because LMS

---

[7] The petition defined "Staffing Agreements" as the agreements between the Texas Entities, *i.e.*, Personal-Touch, and LMS Consulting. C.R. 274. Likewise, the petition defined the "Recruiting Agreements" as the agreements between the Texas Entities and LMS Consulting. *Id.* at 276. Thus, it is clear that LMS Consulting's allegations regarding the breach of the Staffing Agreements and the Recruiting Agreements relate to the Texas Entities (as parties to those agreements), and not to Appellants (as non-parties to those contracts).

LMS Consulting's selective and incomplete quotes run throughout its briefing. For example, in its Statement of Facts section, it contends that Appellants' counsel stated that his "client is a home health agency that operates in 11 states, . . . including Texas." Appellee Br. 3. The entirety of the statement in context, however, states that "when I say my client, Personal-

6

Consulting clearly asserted above its general allegations and throughout its petition that only the *Texas Entities* contracted with LMS Consulting, as discussed above.[8] Thus, LMS Consulting's petition clarifies that the Texas Entities (and not Appellants) contracted with LMS Consulting. And Appellants do not have to negate a basis for jurisdiction that LMS Consulting never asserted, namely that Appellants were parties to contracts with LMS Consulting and breached those contracts. *See Scott*, 833 S.W.2d at 241.

Because LMS Consulting never raised these new jurisdictional arguments in the trial court, its attempt to do so now should be rejected.

## B. *LMS Consulting never asserted that Appellants recruited employees in Texas or contracted with Texas residents.*

LMS Consulting's next argument that Appellants "failed to negate the allegation that they recruit employees in Texas and contracted with Texas residents," is also misguided. As discussed below, LMS Consulting never pled or argued that Appellants recruited employees in Texas or contracted with Texas residents. Instead, it alleged that, pursuant to the staffing and recruiting

---

Touch—or PT Home Services of Dallas, Inc. and PT Home Services of San Antonio Inc. are two Texas entities that operate in Texas and provide home healthcare services." R.R. 5:1-6.

[8] The Texas Supreme Court has warned against such generalized "group pleadings." *See Low v. Henry*, 221 S.W.3d 609, 615 (Tex. 2007) ("The fact that an allegation or claim is alleged against several defendants—so called "group pleadings"—does not relieve the party from meeting the express requirements of Chapter 10.").

agreements at issue, the *Texas Entities* recruited and contracted with Texas residents.[9] Accordingly, its new jurisdictional argument fails.

A review of LMS Consulting's petition reveals that LMS Consulting never pled that Appellants recruited employees in Texas or contracted with Texas residents. For example, it pled that three LMS Consulting contractors—Carla Clark, Hollie Richard, and Angela Dickson—"began working directly for Personal-Touch," which LMS Consulting defined as the Texas Entities. C.R. 277. It also never alleged or argued that Appellants, through an intermediary, recruited Texas residents. Instead, it alleged that the Texas Entities recruited Texas residents for employment with the Texas Entities. *Id.* at 274. It remains that "a foreign corporation is not subject to the jurisdiction of the forum state merely because an affiliate conducts business in the forum state." *Woodward v. AFI, S.A.*, No. 05-94-01498, 1995 Tex. App. LEXIS 3540, at *22 (Tex. App.—Dallas July 31, 1995, no pet.). There simply is no allegation that Appellants recruited one single employee in Texas or that they ever contracted with any Texas resident (or did so through an intermediary). Thus, LMS Consulting's new jurisdictional argument should be rejected.

---

[9] In addition, LMS Consulting pled that Personal-Touch Home Care of N.Y. "actively recruits Texas residents for employment inside and outside of Texas." C.R. 271. LMS Consulting never pled any such allegation against Appellants, although it now attempts to press that argument for the first time on appeal.

8

In another attempt to divert attention from this fatal flaw, LMS Consulting partially cites its "group pleading" allegation that "Defendants entered into valid and enforceable Recruiting Agreements with LMSC." Appellee Br. 17. The critical qualifying language of that allegation, however, is omitted. The complete allegation states as follows: "***As set forth in detail above***, Defendants entered into valid and enforceable Recruiting Agreements with LMSC." The information "set forth above" in the petition unambiguously states that only the Texas Entities entered into contracts with LMS Consulting and allegedly breached those contracts. C.R. 274–76. LMS Consulting's petition unequivocally asserts that the Texas Entities recruited employees in Texas for employment with the Texas Entities and that the Texas Entities contracted with Texas residents. *Id.* It never alleged that Appellants did so.

In short, LMS Consulting never pled—much less argued in opposition to Appellants' special appearances—that it had contracts with Appellants or that Appellants recruited employees in Texas or contracted with Texas residents. Indeed, LMS Consulting pled the exact opposite—that the *Texas Entities* contracted with LMS Consulting and that the *Texas Entities* recruited employees in Texas and contracted with Texas residents. Because LMS Consulting waived its new jurisdictional arguments, Appellants had no obligation to negate these new theories. *See Favour Leasing, LLC v. Mulligan*, No. 05-13-01000, 2014 Tex. App.

9

LEXIS 9180, at \*16 (Tex. App.—Dallas Aug. 19, 2014, no pet.) ("The initial burden is carried by the plaintiff, who must plead sufficient facts to bring a nonresident defendant within the provisions of the Texas long-arm statute.").

**2.** **LMS CONSULTING'S JUDICIAL ADMISSIONS ESTABLISH THAT THERE IS NO BASIS FOR JURISDICTION OVER APPELLANTS.**

Even if LMS Consulting did not waive its new jurisdictional arguments (which it did), its arguments are still barred by its judicial admissions. LMS Consulting argues on appeal that Appellants failed to negate (1) jurisdiction arising out of Appellants' recruitment and staffing agreements with LMS Consulting; (2) the allegation that Appellants recruited employees in Texas and contracted with Texas residents; and (3) that Appellants committed a tort in Texas. As set forth below, however, each of these arguments is barred by the doctrine of judicial admissions, since LMS Consulting affirmatively pled facts contrary to the new jurisdictional arguments asserted in its response brief. Indeed, contrary to its burden "of pleading sufficient allegations to bring the non-resident defendant within the personal jurisdiction of a Texas court,"[10] LMS Consulting pled facts conclusively disproving personal jurisdiction over Appellants.

---

[10] *Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 582 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

10

### A. *__The doctrine of judicial admissions.__*

"Admissions in trial pleadings are judicial admissions in the case in which the pleadings are filed; the facts judicially admitted require no proof and preclude the introduction of evidence to the contrary." *Rippey v. Chase Home Fin., LLC*, No. 02-13-00190, 2014 Tex. App. LEXIS 2911, at *11 (Tex. App.—Fort Worth Mar. 13, 2014, no pet.) (quoting *In re A.E.A.*, 406 S.W.3d 404, 410 (Tex. App.—Fort Worth 2013, no pet.)). In fact, a "judicial admission is conclusive upon the party making it, relieves the opposing party's burden of proving the admitted fact, and bars the admitting party from disputing it." *Id.*; *see also Hennigan v. I.P. Petroleum Co.*, 858 S.W.2d 371, 372 (Tex. 1993). The policy behind this doctrine is that "a party should not be allowed to prevail on its assertions after clearly negating those assertions before a judicial tribunal." *Velco Chems., Inc. v. Polimeri Europa Americas, Inc.*, No. 14-03-00395, 2004 Tex. App. LEXIS 8133, at *13 (Tex. App.—Fort Worth Sept. 7, 2004, no pet.).

### B. *__LMS Consulting judicially admitted that the Texas Entities entered into the recruitment and staffing agreements at issue.__*

As discussed above in Section 1(A), LMS Consulting unambiguously pled that it entered into the relevant recruiting and staffing agreements with the Texas Entities. *See, e.g.,* C.R. 274–77. It did not assert (nor could it assert) that

11

Appellants entered into or breached the relevant agreements.[11]  As a result, LMS Consulting judicially admitted that the Texas Entities, and not Appellants, entered into the relevant contracts with LMS Consulting.  It cannot now argue that Appellants entered into the relevant contracts. *See In re A.E.A.*, 406 S.W.3d at 410 ("David's allegation of changed circumstances constituted a judicial admission of that fact and established that element of Ginger's claim for modification, so Ginger was not required to put on proof of this admitted fact.").

Thus, while LMS Consulting now argues that Appellants "failed to negate jurisdiction" arising from Appellants' alleged breach of recruiting and staffing contracts, the fact is that it never pled that Appellants entered into any such contracts with LMS Consulting.  In fact, it judicially admitted contrary facts—that the *Texas Entities* entered into the subject contracts.  As such, LMS Consulting itself has negated jurisdiction over Appellants through its judicial admissions. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 877, 905 (Tex. 2000) ("A judicial admission not only relieves an adversary from proof of the fact admitted, but also bars the party himself from disputing it.") (internal citations and quotations omitted).

---

[11]     LMS Consulting cannot assert that Appellants entered into any of the contracts made the basis of this dispute and appeal because there simply are no such contracts with Appellants.  If there were such contracts, LMS Consulting would have certainly asserted them in its pleadings as well as its arguments at the special appearance hearing.

**C.** ***LMS Consulting judicially admitted that the Texas Entities recruited employees in Texas and contracted with Texas residents.***

As discussed above in Section 1(B), LMS Consulting pled that the Texas Entities recruited and contracted with Texas residents. *See, e.g.,* C.R. 274–75, 277. This judicial admission is fatal to LMS Consulting's new position that Appellants (not the Texas Entities) recruited employees in Texas and contracted with Texas residents. Aside from failing to plead this allegation, LMS Consulting judicially admitted that the Texas Entities (not Appellants) recruited employees for employment with the Texas Entities and contracted with Texas residents for the Texas Entities. *Id.* As such, it is now barred from changing its position on appeal. *See Horizon*, 34 S.W.3d at 905.

**D.** ***LMS Consulting's jurisdictional argument based on Appellants' alleged tortious interference fails.***

LMS Consulting asserts generally that Appellants "committed an intentional tort" that "was purposefully directed toward Texas." C.R. 272. Its petition also alleges that Appellants interfered with certain contracts "by soliciting those and other individuals to terminate their contract(s) with LMSC." *Id.* at 280. Its petition then states in a conclusory manner that such actions were "directed at residents of Texas and directed toward Texas." *Id.*

The Dallas Court of Appeal's decision in *Favour Leasing, LLC v. Mulligan*, No. 05-13-01000, 2014 Tex. App. LEXIS 9180, at *22 (Tex. App.—Dallas Aug.

19, 2014, no pet.), is instructive on the lack of jurisdiction in this case. In *Favour*, the plaintiff argued that the non-resident defendants committed a tort in Texas by receiving fraudulently transferred assets and by participating in a scheme to hide assets from the plaintiff. In determining that the allegations failed to adequately assert jurisdiction over the non-resident defendants, the court found it outcome determinative that the plaintiff "did not assert that any alleged tortious actions *occurred* in Texas." *Id.* at \*22 (emphasis added).

Similar to the pleading in *Favour*, LMS Consulting never asserted that any alleged tortious conduct *occurred* in Texas. Instead, it vaguely asserted that Appellants' alleged misconduct was "directed" at Texas. This is insufficient to confer jurisdiction since "a nonresident directing a tort at Texas from afar is insufficient to confer specific jurisdiction." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 157 (Tex. 2013). Indeed, LMS Consulting appears to concede that the alleged tortious conduct actually occurred through Appellants' headquarters in New York.[12] As such, the allegations against Appellants for tortious interference fail to warrant the exercise of personal jurisdiction. *See id.*

---

[12] *See, e.g.*, Appellee Br. 3 ("Appellants . . . are all part of a family of corporations based out of Bayside, New York. . . ."); *id.* at 13 ("The New York personnel of Appellants prepared a referral form specifically for LMS Consulting's use in Texas."); *id.* ("[D]ecisions about whether to pay or not to pay LMS came from Dr. Balk and the Appellants in New York.").

(confirming grant of special appearance to non-resident defendant in tortious interference case since alleged interference occurred outside of Texas).[13]

Moreover, even when a plaintiff alleges that Texas residents were involved in the alleged tort and that the resulting injury would be suffered in Texas, "the plaintiff must show the defendant has established minimum contacts with the state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *Favour,* 2014 Tex. App. LEXIS 9180, at *22. And since "a showing of foreseeability of harm in the forum state is insufficient" to establish personal jurisdiction, "the plaintiff must show a substantial connection between the contacts and the operative facts of the litigation." *Id.* As discussed below, even assuming *arguendo* that Appellants committed a tort in Texas (which they did not), LMS Consulting cannot establish that Appellants have sufficient minimum contacts with Texas to warrant the exercise of personal jurisdiction.

**3. THE EXERCISE OF JURISDICTION OVER APPELLANTS DOES NOT COMPORT WITH FAIR PLAY AND SUBSTANTIAL JUSTICE.**

In its response brief, LMS Consulting gives short shrift to the minimum contacts analysis and skips straight to the argument that the exercise of personal jurisdiction over Appellants comports with fair play and substantial justice. But

---

[13] The Texas Supreme Court recently warned that although "allegations that a tort was committed in Texas satisfy our long-arm statute, such allegations do not necessarily satisfy the U.S. Constitution." *Moncrief*, 414 S.W.3d at 149. Here, LMS Consulting never even alleged that the tortious interference was committed in Texas. Instead, it indicated that any such interference occurred in New York.

courts have recognized that the "fair play and substantial justice inquiry is separate and distinct from the minimum contacts issue." *Woodward v. AFI, S.A.*, No. 05-94-01498, 1995 Tex. App. LEXIS 3540, at \*21 (Tex. App.—Dallas July 31, 1995, no pet.). And as Appellants established in their opening brief, they lack sufficient minimum contacts with Texas to support personal jurisdiction—a fact LMS Consulting simply glosses over. The Fifth Circuit has correctly noted: "The Lone Star of Texas may shine brightly throughout the world, but its long arm is not judicially all encompassing." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1161 (5th Cir. 1983).

Aside from lacking sufficient minimum contacts to support personal jurisdiction, the exercise of jurisdiction over Appellants would also offend traditional notions of fair play and substantial justice. As Appellants highlighted in their opening brief, it would be tremendously burdensome for the two New York-based Appellants to defend themselves in Texas, and LMS Consulting has already sued the actual parties to the contracts at issue—the Texas Entities. Thus, there is no reason to force Appellants to defend themselves in a contract dispute where they are not even parties to the contracts at issue. And to the extent LMS Consulting wishes to purse a claim against Appellants for allegedly tortuously interfering with certain contracts, it may attempt to do so in New York.

**4. LMS CONSULTING'S VEIL-PIERCING THEORY OF JURISDICTION FAILS.**

LMS Consulting's singular basis for jurisdiction over Appellants throughout this case has been a veil-piercing theory. *See e.g.*, C.R. 272–73; R.R. 60:3-11; *id.* 61:13-17. Appellants' opening brief firmly established that LMS Consulting failed to carry its heavy burden to establish its veil-piercing theory. Indeed, Texas jurisprudence dictates the outcome in this case:

- "A merely formal corporate separation may be sufficient to prevent imputation of contacts if the separation is real."[14]

- "A subsidiary will not be regarded as the alter ego of its parent company merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of control that stock ownership gives stockholders."[15]

- "Commonality of officers alone is not enough to establish an alter ego relationship."[16]

- "Evidence that the two corporations office in the same building does not invoke the alter ego doctrine."[17]

- "A showing that the two corporations are related in some ways is not enough. The relationship must be so close that the two are interchangeable."[18]

---

[14] *Woodward*, 1995 Tex. App. LEXIS 3540, at *22 (citing *3-D Elec. Co., Inc. v. Barnett Constr. Co.*, 706 S.W.2d 135, 139 (Tex. App.—Dallas 1986, writ ref'd n.r.e.)).

[15] *Id.* (citing *McFee v. Chevron Int'l Oil Co.*, 753 S.W.2d 469, 471 (Tex. App.—Houston [1st Dist.] 1988, no writ)).

[16] *Id.* at *24 (citing *3-D Elec.*, 706 S.W.2d at 139).

[17] *Id.* (citing *3-D Elec.*, 706 S.W.2d at 140).

[18] *Id.* (citing *Equinox Enter. v. Associated Media*, 730 S.W.2d 872, 876-77 (Tex. App.—Dallas 1987, no writ)).

- "Whether two related entities share a common name . . . does not affect whether each has sufficient contacts with the forum for jurisdictional purposes."[19]

- "Appropriate parental involvement includes monitoring the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies."[20]

- "[A] parent company's offering a stock option plan to a subsidiary's employees is acceptable under IRS regulations and is not evidence of abnormal control over the subsidiary."[21]

- "[A] website that is merely informational, presenting only 'passive advertising,' generally will not support the exercise of personal jurisdiction."[22]

- The Texas Supreme Court refused to pierce the corporate veil for jurisdictional purposes even where "Province and [Minden] have at least one common employee and that Province pays certain [Minden] employees, although the salaries are intercompany payables. The names of the two companies are similar, and Province employees provide various services to assist [Minden] in its operations. Province exercises control over [Minden]'s revenues and expenditures and oversees [Minden]'s operations, financial performance, and completion of strategic initiatives. Further, Province audits [Minden]'s financial goals to determine if [Minden] will be able to meet these goals."[23]

- "As parent and subsidiary, Continental Grain and ContiCarriers maintain significant ties. ContiCarriers received its initial capital from Continental Grain. The corporations share office headquarters in Chicago, Illinois. Their salaried employees have the same benefits and are paid by the same payroll system. Employees for Continental Grain

---

[19] *PHC-Minden v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 175 (Tex. 2007).

[20] *Id.* at 176 (internal citations and quotations omitted).

[21] *Id.* (internal citations and quotations omitted).

[22] *Riverside Exports Inc. v. B.R. Crane & Equip., LLC,* 362 S.W.3d 649, 655 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

[23] *PHC-Minden*, 235 S.W.3d at 175-76 (Tex. 2007).

18

provide legal, accounting and other services to ContiCarriers. ContiCarriers and Continental Grain's North American Grain Division ('NAGD') share a bank account and two of ContiCarriers' officers are also officers of NAGD. Further, approximately 50 percent of ContiCarriers' revenue comes from providing shipping services to Continental Grain. ***Despite these connections, we find that Continental Grain did not disregard corporate formalities or exercise such control and dominance over ContiCarriers as to make alter ego jurisdiction proper***."[24]

These cases firmly establish that LMS Consulting has failed to meet its heavy burden to pierce the corporate veil for jurisdictional purposes.

## CONCLUSION AND PRAYER

For the reasons set forth herein and in their special appearances, Appellants are entitled to dismissal for lack of personal jurisdiction. The record unambiguously reflects that the trial court erred when it denied Appellants' special appearances. Accordingly, Appellants respectfully request this Court reverse the trial court's denial of Appellants' special appearances, dismiss Appellants from this case, and for all other relief to which they may be entitled.

---

[24] *Conner v. Conticarriers & Terminals, Inc.*, 944 S.W.2d 405, 419 (Tex. App.— Houston [14th Dist.] 1997, no writ) (emphasis added).

19

Respectfully submitted,

**JACKSON WALKER L.L.P.**

By: */s/ Monte F. James*

Monte F. James
State Bar No. 10547520
mjames@jw.com
Joshua A. Romero
State Bar No. 24047654
jromero@jw.com
Kimberly A. Gdula
State Bar No. 24052209
kgdula@jw.com

100 Congress Avenue, Suite 1100
Austin, Texas  78701
(512) 236-2000
(512) 236-2002 – Fax

**ATTORNEYS FOR APPELLANTS**

## RULE 9.4 CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i), if applicable, because it contains 4,766 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Monte F. James*
Monte F. James


## CERTIFICATE OF SERVICE

This is to certify that on this 24th day of March, 2015, a true and correct copy of the above and foregoing document was electronically mailed to the parties registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this Court and/or via certified mail, return receipt requested upon:

Alejandro Mora
7000 North MoPac Expressway
Suite 200
Austin, Texas 78731
alejandro@morahealthcarelaw.com

David Dunham
Taylor Dunham & Rodriguez LLP
301 Congress Ave., Suite 1050
Austin, Texas 78701
ddunham@taylordunham.com

*/s/ Monte F. James*
Monte F. James