IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 10, 2021 Session

## EBENEZER OLUSEGUN GEORGE V. BYRLE VICTORIA SMITH-GEORGE

Appeal from the Circuit Court for Shelby County
No. CT-002857-18   Jerry Stokes, Judge

———————————————————

### No. W2020-01583-COA-R3-CV

———————————————————

This is an appeal of a post-divorce matter filed by Wife to enforce the parties' marital dissolution agreement.  Primarily at issue was the Wife's award of alimony *in solido*, which, pursuant to the parties' agreement, was to be paid to her out of Husband's retirement accounts, tax free to Wife.  Wife contended that Husband violated the parties' agreement because she had allegedly been taxed on the amount of alimony *in solido*. The trial court found no violation of the marital dissolution agreement concerning the alimony *in solido* payment. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Vicky Hardy Jones, Memphis, Tennessee, for the appellant, Byrle Victoria Smith-George.

Lara E. Butler, Tiffany Bowders and Elizabeth W. Fyke, Memphis, Tennessee, for the appellee, Ebenezer Olusegun George.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Ebenezer Olusegun George ("Husband") and Byrle Victoria Smith-George ("Wife") were divorced by final decree on February 20, 2019. The parties' marital dissolution agreement ("MDA") was incorporated by reference into the final decree.  In connection with the MDA's awarding Wife a *total* of $450,000.00 from Husband's state retirement program, the parties signed a qualified domestic relations order ("QDRO"),

which was subsequently entered by the trial court. Husband was a participant in "employer sponsored retirement plans" that were funded through the Teachers Insurance and Annuity Association ("TIAA") and had two separate annuity contracts via a TIAA and a College Retirement Equities Fund ("CREF"). Per the terms of the QDRO, two accounts were set up in Wife's name that consisted of a TIAA account with a transferred amount of $165,158.75 and a CREF account with a transferred amount of $284,841.25 to represent the total amount owed to Wife per the parties' MDA.[1] Regarding these annuities, the QDRO provided:

> Upon finalization of this Order and pursuant to the terms of said annuities, the current values of [Husband's] TIAA annuity accumulations for the Marital Portion defined below shall be awarded as the [Wife's] sole and exclusive property to be applied to TIAA annuities pro rata subject to the terms and limitations of said annuities.
>
> . . . .
>
> [Wife's] annuities will be issued with the same investment allocation as [Husband's] applied pro rate[sic]. [Wife] must change the investment allocation once his or her annuities are issued in accordance with the contributing employer's plan.

On November 15, 2019, Wife filed a petition for enforcement of the MDA.[2] For purposes of this appeal, we are concerned only with $90,000.00 of the aforementioned $450,000.00 awarded under the MDA. The $90,000.00 amount at issue was designated in the MDA as alimony *in solido*. According to Wife, the $90,000.00 amount was to be "non-taxable" and come from Husband's retirement accounts. After the funds were transferred to Wife's accounts pursuant to the QDRO, Wife withdrew $125,000.00. Indeed, upon this withdrawal, the plan administrator for Wife withheld taxes in the amount of $34,687.50, leaving Wife with a net amount of $90,312.50. Wife sought reimbursement from Husband of the withheld taxes, to which he refused. As a result, Wife requested that the trial court enter a judgment against Husband in the amount of $34,687.50. In his response, Husband claimed that Wife was made aware of the tax consequences by the plan administrator prior to Wife choosing to take the withdrawal from the [retirement accounts] but noted that she chose to take the withdrawal despite the tax ramifications.

In its order entered October 29, 2020, the trial court concluded that "[Wife] knew

---

[1] Indeed, the QDRO provides that "[t]he total amount of the transfer . . . is $450,000 pursuant to the [MDA] entered by the parties and approved by the Court through the entry of the Final Decree of Divorce on February 20, 2019."

[2] Specifically, Wife's petition was entitled "Petition for Enforcement of Marital Dissolution Agreement, for Declaratory Judgment, for Entry of Money Judgment and Judgment Lien, and for Attorney Fees and Expenses."

that her award of $90,000.00 would come from [Husband's] retirement accounts. Further, she signed the QDRO which stated she was subject to the terms and limitations of said annuity. Also, she was advised in advance that her taxes would be withheld from such transaction." Moreover, the trial court found that "[i]f the parties meant that [Husband] was to pay any additional taxes whenever [Wife] decided to withdraw funds from the retirement account, then the parties could have and would have placed such language in the MDA and/or the QDRO." As a result, the trial court determined that Wife was responsible for the tax liability "after the transfer of the stated amount was made in [Wife's] name." The trial court ultimately awarded Wife $3,500.00 in attorney's fees in connection with Husband's breach of a separate portion of the parties' MDA. Wife thereafter filed this appeal.

## ISSUES PRESENTED

Wife raises three issues on appeal, which we have restated as follows:

1. Whether the trial court erred in holding that Wife is responsible for the tax liability she incurred related to her withdrawal of funds from her annuity accounts.
2. Whether the trial court erred in awarding Wife only $3,500.00 in attorney's fees.
3. Whether Wife is entitled to her attorney's fees and expenses on appeal.

Husband raises only one issue on appeal:

1. Whether Husband is entitled to an award of attorney's fees and expenses on appeal.

## STANDARD OF REVIEW

"Our review is de novo upon the record of the proceedings below with a presumption of correctness as to the trial court's factual findings unless the evidence preponderates against those findings." *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006) (citing Tenn. R. App. P. 13(d)). However, the trial court's conclusions of law "are accorded no such presumption." *Id.* (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)).

## DISCUSSION

*Whether the Trial Court Erred in Holding Wife Responsible for the Tax Liability*

On appeal, Wife argues that the trial court erred in holding her responsible for the tax liability she incurred when she withdrew the funds from her retirement accounts. Specifically, she contends that the parties' MDA makes clear that it was Husband who was

to bear the tax liability for the alimony *in solido* award.

An MDA "is a contract and thus is generally subject to the rules governing construction of contracts." *Id.* (citing *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001); *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003)). As our interpretation of a contract is a matter of law, we review an MDA de novo on the record with no presumption of correctness as to the trial court's conclusions of law. *Id.* (citing *Honeycutt*, 152 S.W.3d at 561). Moreover,

> [o]nce [an MDA] has been incorporated into a divorce decree, it may be enforced just like any other judgment. However, should disputes arise later regarding the meaning of a provision in a marital dissolution agreement, the courts will invoke the familiar rules of contract construction to give the fullest possible effect of the intention of the parties as reflected in their marital dissolution agreement.

*Hoefler v. Hoefler*, No. M1998-00966-COA-R3-CV, 2001 WL 327897, at *3 (Tenn. Ct. App. Apr. 5, 2001) (citing *Towner v. Towner*, 858 S.W.2d 888, 890 (Tenn. 1993)). "The purpose of interpreting a written contract is to ascertain and to give effect to the contracting parties' intentions." *Id.* (citing *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999); *Galleria Assocs., L.P. v. Mogk*, 34 S.W.3d 874, 876-77 (Tenn. Ct. App. 2000)). "It is the universal rule that a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another." *Associated Press v. WGNS, Inc.*, 348 S.W.2d 507, 512 (Tenn. Ct. App. 1961). As such, when an MDA "clearly anticipates the entry of a QDRO, . . . their respective provisions may be **consistently construed**." *Davidson v. Davidson*, 916 S.W.2d 918, 923 (Tenn. Ct. App. 1995) (emphasis added). Nevertheless, this Court has previously vacated a QDRO which conflicted with the terms of an MDA incorporated into a divorce decree. *See Lagrone v. Lagrone*, No. 01A01-9603-CH-00125, 1996 WL 512032, at *3 (Tenn. Ct. App. Sept. 11, 1996) (concluding that the QDRO did not conform to the final decree and would ultimately modify a property division which was not modifiable once the divorce decree became final). Here, the parties signed an MDA, which was later incorporated into the final decree of divorce. According to the parties' MDA, "Husband shall initiate proceedings to draft and file said QDRO(s) within sixty (60) days of the execution of this Agreement." Clearly, as indicated by this language, the entry of a QDRO was anticipated and, therefore, "their respective provisions may be consistently construed" insofar as the QDRO does not conflict with the terms of the MDA. *Id.*

As we noted earlier, Wife was to receive a total of $450,000.00 from Husband's retirement accounts, $90,000.00 of which was to represent an award of alimony *in solido*. In relevant part, the MDA specifically stated that "Husband shall pay to Wife the sum of $90,000 as alimony *in solido*, which shall be non-modifiable, non-taxable and non-deductible. Said payment shall come from Husband's State of Tennessee Optional

Retirement Program." Subsequent to the final decree of divorce, which incorporated this MDA, the trial court entered a QDRO which set forth Husband's payment to Wife of $450,000.00, including the $90.000.00 designated as alimony *in solido*. According to the QDRO, Husband's payment to Wife was to be effectuated via a transfer from Husband's retirement accounts to accounts created for Wife.[3] The entire transfer was non-taxable to Wife. Subsequent to the transfer of funds as contemplated by the parties' MDA and QDRO, Wife made a withdrawal from her accounts. Specifically, we note that Wife withdrew $125,000.00 from her retirement accounts and received a net amount of approximately $90,000.00 due to the tax liability on the withdrawal. Wife argued that this constituted an improper tax liability imposed on her and thus sought repayment from Husband for the amount of taxes withheld. The trial court found, however, that the parties "knew the source of the division of funds" and that by signing the QDRO, they had to abide by its terms. According to the trial court, "[i]f the parties meant that [Husband] was to pay any additional taxes whenever [Wife] decided to withdraw funds from the retirement account, then the parties could have and would have placed such language in the MDA and/or the QDRO." Accordingly, "[p]ursuant to the unambiguous terms of the QDRO, Wife is required to pay her own taxes after the transfer of the stated amount was made in [Wife's] name."

On appeal, Wife takes the position that the trial court erred in holding her liable for the $34,687.50 worth of taxes she incurred in withdrawing funds from her own accounts subsequent to the transfer from Husband. In support of this, she references two provisions contained in the parties' MDA, as follows:

> 23.1   Wife shall receive a total of $360,000 from Husband's State of Tennessee Optional Retirement Program.
>
> . . . .
>
> 26.2   Husband shall pay to Wife the sum of $90,000 as alimony in solido, which shall be non-modifiable, non-taxable and non-deductible. Said payment shall come from Husband's State of Tennessee Optional Retirement Plan.

According to Wife, these provisions clearly provide that Husband's alimony *in solido* payment to her was to be non-taxable. As such, Wife argues that she "was entitled to a lump sum payment of $90,000, not reduced by taxes." Respectfully, we disagree with Wife's interpretation of both the MDA and the QDRO. Here, Husband did in fact pay Wife the sum of $90,000.00 per the terms of the MDA. Wife was to receive a *total* of $450,000.00 from Husband via his retirement accounts. Included in this total amount was

---

[3] Specifically, as provided for in the QDRO, Wife was to have TIAA and CREF annuities, similar to Husband.

the money representing Wife's award of alimony *in solido*. Per the terms of the QDRO, Husband paid Wife a total of $450,000.00 from his retirement accounts, in compliance with the parties' MDA. It is not disputed that this was a tax-free transfer to Wife. As we perceive it, Husband complied with his obligations under the MDA in effectuating the payment via the QDRO. Moreover, as to Wife's issues with the tax liability, we point to the express language of the QDRO which clearly provides that:

> Upon finalization of this Order and pursuant to the terms of said annuities, the current values of the Participant's TIAA annuity accumulations for the Marital Portion defined below shall be awarded as [Wife's] sole and exclusive property to be applied to TIAA annuities pro rata **subject to the terms and limitations of said annuities**.

(emphasis added) Based on this language, Wife's own *individual* accounts are subject to the potential for Wife to incur tax liability on any withdrawals pursuant to the terms and limitations of her accounts. We find the present issue of Wife's tax liability to be outside the parameters of Husband's liability as contemplated by the MDA and the QDRO. *After* Wife received the money owed to her by Husband pursuant to a non-taxable transfer, Wife, withdrawing funds from her *own accounts*, was taxed on her withdrawal, presumably per the limitations and/or stipulations attached to her accounts as contemplated by the QDRO's language quoted above. We conclude, as did the trial court, that if Husband was to be responsible for the taxes incurred on any future withdrawal Wife made, the parties would have provided for such in the MDA or the QDRO. However, upon review of both documents, we find that Husband's obligation was fulfilled upon his transfer of the funds tax free from his retirement accounts to Wife. Wife's actions concerning the funds thereafter are not of consequence to the parties' MDA.[4]

As a result, we affirm the trial court's interpretation of the parties' MDA and the QDRO.[5]

*Attorney's Fees on Appeal*

Husband asks that he be awarded attorney's fees and expenses on appeal for

---

[4] We find it pertinent to note that, in her brief, Wife contends that she "was denied the benefit of the bargain that she had negotiated." To the contrary, we note that at all times during the proceedings concerning both the MDA and the QDRO, Wife was represented by counsel. Wife testified that she had the opportunity to discuss the terms of the QDRO with her attorney prior to signing. Moreover, and more importantly, Wife also testified that she was aware, prior to the withdrawal of these funds, that she would have taxes withheld and that she chose to make the withdrawal regardless.

[5] As noted previously, Wife has raised two additional issues concerning attorney's fees awarded to her in the trial court, as well as on appeal. However, because we affirm the trial court, we find Wife's argument as to the attorney's fees at the trial court level to be without merit. We similarly deny Wife's request for attorney's fees on appeal.

defending against Wife's appeal pursuant to Tennessee Code Annotated section 36-5-103(c), which provides:

> A prevailing party may recover reasonably attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit concerning the adjudication of custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Tenn. Code Ann. § 36-5-103(c). In considering a party's request for attorney's fees on appeal, "we examine 'the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal . . . and any other equitable factor[s] that need be considered.'" *Cain-Swope v. Swope*, 523 S.W.3d 79, 101-02 (Tenn. Ct. App. 2016) (quoting *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454, at *10 (Tenn. Ct. App. Sept. 3, 2003)). After considering these factors, we decline to award Husband his attorney's fees on appeal.[6]

### CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed, both parties' requests for attorney's fees are denied, and the case is remanded for further proceedings as may be necessary and are consistent with this Opinion.


s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE

---

[6] Husband also requests attorney's fees pursuant to Tennessee Code Annotated section 27-1-122. In exercising our discretion, we decline to award any fees in connection with this statute.